| | |
|---|---|
| In re: Aqueous Film-Forming Foams (AFFF) Products Liability Litigation | MDL No. 2873 |
| | This Document relates to *Weirton Area Water Board, et al., v. Heritage Thermal Services, Inc., et al.,* Case No. 5:25-cv-126-JPB (N.D.W. Va.) |

**MEMORANDUM IN SUPPORT OF DEFENDANT ARCWOOD ENVIRONMENTAL – EAST LIVERPOOL, INC. AND DEFENDANT ARCWOOD TRANSPORT, LLC'S JOINT MOTION TO TRANSFER TAG-ALONG ACTION *WEIRTON AREA WATER BOARD, ET AL. v. HERITAGE THERMAL SERVICES, INC., ET AL.,* TO THE *IN RE AFFF MDL***

Defendants Arcwood Environmental – East Liverpool, Inc., and Arcwood Transport, LLC (collectively, "Arcwood"),[1] move to transfer the above-referenced action, brought by the Weirton Area Water Board and the City of Weirton, West Virginia (collectively, "Plaintiffs")**,** to Judge Richard M. Gergel as a member case of multidistrict litigation no. 2873, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-mn-2873-RMG (D.S.C.) (the "AFFF MDL" or "MDL"). Transfer to the AFFF MDL is appropriate pursuant to J.P.M.L. Rules 6.1, 6.2, and 7.1(b)(i).[2]

## I.  INTRODUCTION

Plaintiffs own and operate a water treatment plant in Weirton, West Virginia. Their Complaint ("*Weirton III*") alleges that PFAS, including PFOA and PFOS, originating from the defendants' business operations have polluted the Ohio River and thereby contaminated Plaintiffs'

---

[1] Due to recent name changes, named-defendant Heritage Thermal Services, Inc. is now known as Arcwood Environmental – East Liverpool, Inc. Named-defendant Heritage Transport LLC is now known as Arcwood Transport, LLC.

[2] While Arcwood believes the AFFF MDL is the appropriate forum, Arcwood disputes Plaintiffs' allegations of liability. Arcwood's Motion to Transfer is made without admission as to any alleged AFFF contamination.

water supply.  Although Plaintiffs expressly disclaim any relief related to aqueous film-forming foam ("AFFF"), they nonetheless seek substantial damages for cleanup, remediation, and monitoring costs arising from this alleged contamination.  Despite Plaintiffs' disclaimer, *Weirton III* squarely belongs in the AFFF MDL and should be transferred there for four separate and independent reasons.

*First*, Plaintiffs currently **have two cases pending in this MDL** (collectively, the "Weirton MDL Cases") that allege **AFFF contamination** of the **exact same water supply** at issue in *Weirton III*.  All three cases involve the same Plaintiffs, the same water supply, the same water intake and source well, and the same water treatment facility—making the factual overlap absolute. This Panel has repeatedly transferred cases—even those disclaiming AFFF contamination—when the same water supply is already implicated in the MDL.

*Second*, this Panel has made clear that where a plaintiff has brought both an AFFF action and a purported non-AFFF action, transfer of the non-AFFF action to this MDL is appropriate where there is "clear overlap" between the contamination sites that is "substantial and concrete." That is precisely the situation here.  Due to the complete factual overlap among the *Weirton* trilogy of cases, *Weirton III* is *the* quintessential example of when transfer of a putative non-AFFF complaint is appropriate due to "clear overlap" with a contamination site already at issue in the MDL.

*Third*, *Weirton III* independently qualifies for transfer under AFFF Case Management Order No. 1 ("CMO 1"), which mandates pretrial consolidation of all cases transferred to the AFFF MDL, as well as "all related cases" where plaintiffs "allege injuries or damages caused by groundwater contaminated with chemicals found in aqueous film-forming foam products." Plaintiffs in *Weirton III* allege damages cause by water contaminated with PFOA and PFOS—the

very chemicals "found in aqueous film-forming foam products." Accordingly, *Weirton III* falls within the scope of "related cases" subject to consolidation under CMO 1.

*Finally*, Judge Gergel recently rejected AFFF disclaimers as a basis to avoid MDL transfer. In AFFF MDL Case Management Order No. 36 ("CMO 36"), Judge Gergel found AFFF disclaimers "contrary to law," and explicitly requested that the JPML transfer all such cases to the AFFF MDL to enable the MDL "to efficiently oversee and manage these cases." *Weirton III* plainly seeks recovery related to PFOA and PFOS—chemicals that are central to the AFFF MDL and commonly found in AFFF formulations—while attempting to circumvent the AFFF MDL through a strategic disclaimer. This pleading tactic has been expressly rejected by CMO 36 and provides an independent basis for transfer.

For these and the below reasons, this case should be transferred to the AFFF MDL.

## II.    BACKGROUND

Plaintiffs have filed three separate actions in multiple jurisdictions alleging that dozens of defendants have contaminated their water supply, the Ohio River, by discharging PFAS, including PFOA and PFOS, into the environment. Two of these cases are currently pending in the MDL due to additional allegations of **AFFF contamination**; the third, *Weirton III*, disclaims it.

The background and general allegations for all three complaints are identical:[3] Plaintiffs own and operate a public water system in the City of Weirton, West Virginia. Plaintiffs' water treatment plant draws and treats water from the Ohio River and then provides it as drinking water to its customers. Plaintiffs claim that defendants, who range from industrial manufacturers to waste incinerators, knew or should have known that their actions would result in the discharge and/or release of PFAS, including PFOA and/or PFOS, into the environment, including the Ohio

---

[3] A comparison of all three complaints, including the implicated water supply, water intake facilities, and water treatment facilities is included in **Exhibit 4**.

River. Plaintiffs seek damages relating to the harm caused by the alleged pollution, including damages related to monitoring, remediating, and investigating the alleged contamination to their water supply.

In the first case currently pending in the MDL, *Weirton Area Water Board, et al., v. 3M Co., et al.*, MDL Case No. 2:21-cv-793-RMG (D.S.C.) ("*Weirton I*"), Plaintiffs claim that the "Weirton Water System has been contaminated with per- and poly-fluoroalkyl substances ('PFAS'), including perfluorooctane sulfonate ('PFOS') and perfluorooctanoic acid ('PFOA')." *Weirton I,* Amend. Compl. ¶ 7, attached as **Exhibit 2**. Plaintiffs claim that a dozen "Manufacturing Defendants" "knew or should have known that, in the course of normal and/or anticipated transportation, storage, use and disposal of the above chemicals, they would enter the surface and groundwater in West Virginia, including the Ohio River and the watershed from which Plaintiffs obtain their drinking water supplies." *Id.* at ¶ 13.

As to allegations of AFFF, PFOA, and PFOS contamination**,** in a section titled "Defendants' Manufacture and Sale of AFFF/Component Products," Plaintiffs make the following representative allegations:

- "On information and belief, the Manufacturing Defendants designed, manufactured, marketed, distributed, and/or sold PFAS and/or products containing PFAS, **including AFFF**, which were discharged into the environment **in and around Weirton, West Virginia** during fire protection, training, and response activities, resulting in widespread PFAS contamination." *Id.* at ¶ 139 (emphasis added).
- "Beginning in the 1960s, the Manufacturing Defendants designed, manufactured, marketed, distributed, and/or sold **AFFF products** that used fluorosurfactants containing either **PFOS, PFOA**, or the chemical precursors that degrade into **PFOS** and **PFOA**." *Id.* at ¶ 136 (emphasis added).
- "On information and belief, Manufacturing Defendants' **AFFF** was used in various industrial facilities **in and around Weirton, West Virginia** . . . ." *Id.* at ¶ 140 (emphasis added).

*Weirton I* was originally filed in Brooke County, West Virginia on or around April 26, 2020. *See Weirton Area Water Board and City of Weirton, West Virginia v. 3M Co., et al.,* Case No. 5:20-

4

cv-102-JPB (N.D.W. Va.), Dkt. No. 1, p. 1-2. On April 26, 2020, the case was removed to the Northern District of West Virginia. *Id.*, Dkt. No. 1, p. 1. On January 19, 2021, Plaintiffs filed an amended complaint to add detailed allegations of AFFF contamination.[4] *See, e.g., id.,* Dkt. No. 271, ¶¶ 133–138. *Weirton I* was transferred to the AFFF MDL on February 26, 2021, and given individual case number 2:21-cv-793. *Id.*, Feb. 26, 2021, docket text entry. It remains pending in the AFFF MDL.

In the second case in the MDL, *Weirton Area Water Board, et al., v. Corteva, Inc., et al.*, MDL Case No. 2:21-cv-1064-RMG (D.S.C.) ("*Weirton II*") (attached as **Exhibit 3**), Plaintiffs make nearly identical claims as the first. Plaintiffs claim that the "Weirton Water System has been contaminated with per- and poly-fluoroalkyl substances ('PFAS'), including perfluorooctane sulfonate ('PFOS') and perfluorooctanoic acid ('PFOA')." *Weirton II* Compl. ¶ 9. Plaintiffs claim that the "Defendants knew or should have known that, in the course of normal and/or anticipated transportation, storage, use and disposal of the above chemicals, they would enter the surface and groundwater in West Virginia, including the Ohio River and the watershed from which Plaintiffs obtain their drinking water supplies." *Id.* at ¶ 18.

As to allegations of AFFF, PFOA, and PFOS contamination, in a section titled "Defendants' Manufacture and Sale of AFFF/Component Products," Plaintiffs make the following representative allegations:

- "On information and belief, the Defendants designed, manufactured, marketed, distributed, and/or sold PFAS and/or products containing PFAS, **including AFFF, which were discharged into the environment in and around Weirton, West Virginia** during fire protection, training, and response activities, resulting in widespread PFAS contamination." *Id.* at ¶ 117 (emphasis added).

---

[4] *See id.*, Joint Stipulation and Motion for Order Staying Proceedings, Dkt No. 287, p. 2 ("On January 19, 2021, Plaintiffs filed an Amended Complaint, alleging additional factual allegations relating to the design, distribution and sale by Defendants of AFFF fire-fighting foam products containing perfluorooctane sulfonate ('PFOS') and perfluorooctanoic acid ('PFOA') and/or their chemical precursors ('AFFF')).'"

- "Beginning in the 1960s, the Defendants designed, manufactured, marketed, distributed, and/or sold **AFFF products** that used fluorosurfactants containing either **PFOS, PFOA**, or the chemical precursors that degrade into **PFOS and PFOA**." *Id.* at ¶ 114 (emphasis added).

- "On information and belief, Defendants' **AFFF was purchased and used by various industrial facilities in and around Weirton, West Virginia . . . .**" *Id.* at ¶ 118 (emphasis added).

*Weirton II* was originally filed in the District of Delaware on March 5, 2021. *See generally Weirton Area Water Board, et al., v. Corteva et al.*, Case No. 1:21-cv-343 (D. Del.), Dkt. No. 1. On April 12, 2021, the case was transferred to the MDL and given individual case number 2:21-cv-1064. *Id.*, Dkt. No 9. *Weirton II* remains pending in the AFFF MDL.

Plaintiffs' current complaint, *Weirton III*, follows the same pattern. Plaintiffs claim that the Weirton Water system has been contaminated by "synthetic per- and polyfluoroalkyl substances ("PFAS") existing in Plaintiffs' Water Sources as a result of Defendants' tortious conduct." *Weirton III* Compl., ¶ 3, attached as **Exhibit 1**. Plaintiffs claim that they "utilize[] as its water sources an intake located in the Ohio River in Brooke County and a well located near the Ohio River in Brooke County (the 'Water Sources')." *Id. at* ¶ 2. Plaintiffs claim that "[s]amples taken from the Water confirmed the presence of multiple PFAS compounds in the Weirton Water Sources, including both the groundwater well and the Ohio River, including but not limited to **PFOA, PFOS**, PFHxS, and PFHxA." *Id. at* ¶ 201 (emphasis added). Plaintiffs claim that "PFAS associated with and/or emanating from Defendants' business operations migrated into the hydrological features and Water Sources utilized by Plaintiffs." *Id. at* ¶ 7.

As to AFFF, "Plaintiffs expressly disclaim recovery for PFAS contamination from aqueous film-forming foam (AFFF)." *Id.* at 44, n. 11.

On September 22, 2025, Arcwood filed a Notice of Potential Tag-Along Action in the JPML, requesting a conditional transfer order (CTO) into the AFFF MDL. On September 26, 2025, the Clerk of the JPML denied Arcwood's CTO. *See* MDL No. 2873 (J.P.M.L. Sept. 26, 2024), ECF

No. 3805. Arcwood, therefore, files this Motion to Transfer pursuant to Rule 7.1(b)(i) of the JPML Rules of Procedure.

III. ARGUMENT

A. The Panel should transfer *Weirton III* because Plaintiffs' water supply is already at issue in the Weirton MDL Cases.

Transfer of *Weirton III* to the MDL is warranted because Plaintiffs' water supply is already implicated in the AFFF MDL. Plaintiffs currently have two cases pending in this MDL—*Weirton I* and *Weirton II*—that allege **AFFF contamination** of the **exact same water supply** at issue in *Weirton III*. Due to the obvious and indisputable overlap with the water supply at issue in these cases, all three cases are inextricably linked and will require identical discovery as to nature and origin of the alleged contaminants. Transfer, therefore, will promote the just and efficient resolution of this litigation.

This Panel has consistently made clear that disclaiming AFFF contamination does not prevent transfer when the same water supply is already implicated in the AFFF MDL.

In fact, in *City of Wausau*, the Panel ordered transfer under nearly identical circumstances as the case *sub judice*. *See* Transfer Order, MDL No. 2873 (J.P.M.L. June 2, 2025), ECF No. 3536. In that case, the City of Wausau (the "City") alleged PFAS contamination of its drinking water from facilities located in the Wisconsin River floodplain. *Id.* at 3. In opposing transfer to the MDL, the City argued that the action "involves no allegations of AFFF contamination and names no defendants that manufactured, supplied, or used AFFF or AFFF products." *Id.* Nonetheless, the Panel found transfer was appropriate because the City "also has filed an action against 3M and other traditional AFFF defendants directly in the MDL, alleging that its drinking water—drawn from the same six municipal wells—is contaminated with PFAS, including from AFFF sources." *Id.* The Panel reasoned that the case "will involve discovery as to the sources of the PFAS

7

contaminants in the **same water supply** drawn from the same six municipal wells at issue in the City's MDL action." *Id.* at 4 (emphasis added). Therefore, the Panel found that "[g]iven this overlap as to a central factual issue in both cases, transfer is warranted." *Id.*

Similarly, in *New Jersey-American Water Company Inc.* ("*NJAW I*"), the Panel ordered transfer of another case disclaiming AFFF contamination where the relevant water system was already at issue in the AFFF MDL. *See* Transfer Order, MDL No. 2873 (J.P.M.L. Oct. 5, 2020), ECF No. 691. In *NJAW I*, plaintiff, the New Jersey-American Water Company, disclaimed recovery for AFFF contamination in its complaint, and instead, sought recovery against a manufacturing defendant based on alleged PFOA contamination. *Id.* at 1. In support of transfer, the defendant argued that plaintiff was pursuing a duplicative claim in the MDL. *Id.* This Panel ordered transfer, finding that "plaintiff is seeking (or potentially seeking) recovery for PFAS contamination of *the same water supply*; in one action from PFAS discharged by the Chambers Works; in the other from PFAS incorporated into AFFF products." *Id.* at 2 (emphasis original). Because "[p]laintiff could have asserted all of these claims in the same action, but instead chose to split these claims across two actions," the Panel found that "[i]t would be inefficient for these actions to proceed separately and potentially prejudicial to the parties." *Id.*

The *City of Wausau* and *NJAW I* are merely two examples that exemplify this Panel's repeated and consistent finding: Transfer is appropriate—even when the complaint disclaims AFFF contamination—when the relevant water supply is already at issue in the MDL.[5]

---

[5] *See*, *e.g.* Transfer Order, MDL No. 2873 (J.P.M.L. Dec. 7, 2023), ECF No. 2216 at 1–2 (transferring *Commonwealth of Kentucky* even though the complaint contained no allegations of AFFF contamination because "plaintiff is seeking recovery for PFAS contamination of the **same water supply** in a separate action pending in the MDL that is specifically directed to AFFFs" and thus, the "action here will share common questions of fact with the AFFF actions in the MDL and will benefit from inclusion in the centralized proceeding") (emphasis added); Transfer Order, MDL No. 2873 (J.P.M.L. June. 2, 2025), ECF No. 3536 at 1–2 (transferring *City of Savannah* even though the complaint disclaimed AFFF contamination "because the **water supply** at issue in *City of Savannah* is already at issue in an action in the MDL.")

Here, the water supply at issue in *Weirton III* is *identical* to the water supply already implicated in the Weirton MDL Cases.  All three cases involve the same water supply—the Ohio River.  All three cases involve the same water well and intake facility.  All three cases involve the same water treatment facility located in Brooke County, West Virginia.   And, of course, all three cases involve the same Plaintiffs.  Thus, there can be no reasonable dispute that the Weirton water supply is already at issue in the AFFF MDL.[6]

Nor can there be any reasonable dispute that AFFF is at issue in the Weirton MDL Cases.  As discussed in the Background section, *supra*, the Weirton MDL Cases contain detailed allegations regarding AFFF contamination by numerous defendants, including a section related to the "Sale of **AFFF**/Component Products."  This section, and others, contains explicit allegations related to AFFF contamination to Plaintiffs' water supply:

- "On information and belief, the Manufacturing Defendants designed, manufactured, marketed, distributed, and/or sold PFAS and/or products containing PFAS, **including AFFF**, which were discharged into the environment **in and around Weirton, West Virginia** during fire protection, training, and response activities, resulting in widespread PFAS contamination." *Weirton I* Compl. ¶ 139 (emphasis added).[7]

---

(emphasis added); Transfer Order, MDL No. 2873 (J.P.M.L. June. 4, 2023), ECF No. 1927, at 2–3 (transferring *State of Illinois*' putative "non-AFFF" case because the complaint "identifies specific 'community **water supplies (CWS) that are at issue in the MDL**" and stating "[i]t is sufficient that multiple CWS complaints in the MDL involve the **same water sources** as the State of Illinois complaint") (emphasis added); *id.* at 2 (ordering transfer of *Broy*, even though the complaint disclaimed AFFF contamination, because plaintiffs' "own water provider is alleging that the water contamination at issue in both *Broy* and *City of Corona* was caused, at least in part, by AFFFs."); Transfer Order, MDL No. 2873 (J.P.M.L. Jan. 31, 2024), ECF No. 2286 at 1–2 (ordering transfer of *Suessmann* because other municipalities had sought to "recover for the alleged PFAS contamination of their **drinking water supplies** . . .") (emphasis added).

[6] A chart identifying the similarities between *Weirton I, II, and III* is included as **Exhibit 4**.

[7] *See also Weirton II* Compl ¶ 117 ("On information and belief, the Defendants designed, manufactured, marketed, distributed, and/or sold PFAS and/or products containing PFAS, **including AFFF,** which were discharged into the environment **in and around Weirton, West Virginia** during fire protection, training, and response activities, resulting in widespread PFAS contamination."  (emphasis added).

- "On information and belief, Manufacturing Defendants' **AFFF** was used in various industrial facilities **in and around Weirton, West Virginia** . . . ." *Id.* at ¶ 140 (emphasis added).[8]

- "PFAS and/or products containing PFAS, **including AFFF**, designed, sold and distributed by the Manufacturing Defendants were applied, discharged, disposed of, or otherwise released at various locations, at various times, and in various amounts onto the lands and/or water in the vicinity of the Weirton Water System, **including the Ohio River** and the Source Water Protection Area for Weirton. *Id.* at ¶ 164 (emphasis added).[9]

Further, as in *City of Wausau, Weirton I* involves the "traditional" AFFF manufacturing defendants who have historically been named as defendants in the MDL. *See* Transfer Order, MDL No. 2873 (J.P.M.L. June 2, 2025), ECF No. 3536 at 5, n. 9 ("Signature's direct-filed complaint names 3M and other traditional AFFF defendants, including JCI affiliates Tyco Fire Products LP (formerly known as Ansul) and Chemguard, Inc. . . ."); *compare with Weirton I* (naming 3M, Tyco Fire Products, LP, and Chemguard, Inc. as defendants).

As such, *Weirton I*, *II*, and *III* share identical questions of fact and "will involve discovery as to the sources of the PFAS contaminants in the same water supply drawn from the same [] municipal wells at issue in" the Weirton MDL Cases, *City of Wausau*, ECF No. 3536, and will "share common questions of fact with the AFFF actions in the MDL and will benefit from inclusion in the centralized proceeding," *Commonwealth of Kentucky*, ECF No. 2216. *See also NJAW I*, ECF No. 691 (Plaintiff could have asserted all of these claims in the same action, but instead chose to split these claims across two actions," therefore "[i]t would be inefficient for these actions to

---

[8] *See also Weirton II* Compl. ¶ 118 ("On information and belief, Defendants' **AFFF was purchased and used by various industrial facilities in and around Weirton, West Virginia** . . . .") (emphasis added).

[9] *See also Weirton II* at ¶ 142 ("PFAS and/or products containing PFAS, **including AFFF**, designed, sold and distributed by the Defendants were applied, discharged, disposed of, or otherwise released at various locations, at various times, and in various amounts onto the lands and/or water in the vicinity of the Weirton Water System, **including the Ohio River** and the Source Water Protection Area for Weirton.") (emphasis added).

proceed separately and potentially prejudicial to the parties.") Therefore, "[g]iven this overlap as to a central factual issue in both cases, transfer is warranted." *City of Wausau,* ECF No. 3536.

**B.      This Panel should transfer *Weirton III* because there is "clear overlap" with contamination sites at issue in the AFFF MDL.**

Transfer of *Weirton III* to the MDL is also warranted because there is "clear overlap" with the contamination site at issue in the Weirton MDL Cases. This Panel has repeatedly outlined the standard governing transfer under the exact circumstances presented here:

> "Where a plaintiff has brought both an AFFF action and a purported non-AFFF action, the Panel has stated that '[t]he critical determination is whether there is a **clear overlap** between the putative non-AFFF complaint and complaints in the MDL with respect to alleged **contamination sites**, such that the plaintiff's attempt to maintain separate non-AFFF and AFFF complaints is untenable. . . . to warrant transfer of the purportedly non-AFFF action, such overlap must be "sufficiently 'substantial and concrete,' such that transfer to the MDL will enhance efficiency and convenience."

Transfer Order, MDL No. 2873 (J.P.M.L. June 2, 2025), ECF No. 3536 at 5–6 (quoting Order Denying Transfer, MDL No. 2873 (J.P.M.L. Oct. 4, 2023), ECF No. 2129) (emphasis added).

A recent case underscores this rule and its application. In *Signature Flight Support*, the Panel ordered transfer of a non-AFFF complaint because the plaintiff ("Signature Flight") had already filed an MDL action alleging AFFF contamination **at its own facility**. *See* Transfer Order, MDL No. 2873 (J.P.M.L. June 2, 2025), ECF No. 3536. While Signature Flight attempted to disclaim AFFF contamination in an amended complaint, this Panel found that Signature Flight had already filed "an action directly in the MDL alleging PFAS contamination **of its properties** due to the manufacture, marketing, and distribution of PFAS-containing products, including AFFF." *Id.* at 5 (emphasis added). To determine whether transfer was appropriate, this Panel reiterated its clear standard: "[w]here a plaintiff has brought both an AFFF action and a purported non-AFFF action . . . the critical determination is whether there is a clear overlap between the putative non-

AFFF complaint and complaints in the MDL with respect to alleged contamination sites, such that the plaintiff's attempt to maintain separate non-AFFF and AFFF complaints is untenable." *Id.* at 5–6 (quoting Order Denying Transfer, MDL No. 2873 (J.P.M.L. Oct. 4, 2023), ECF No. 2129). This overlap must be "sufficiently 'substantial and concrete,' such that transfer to the MDL will enhance efficiency and convenience." *Id.* at 6.

Applying this standard, the Panel found that "Signature's allegations in two separate complaints of PFAS contamination **at its facilities**, including at nine or more **specific locations**, will involve overlapping discovery as to the nature and source(s) of the PFAS contamination at those sites." *Id.* (emphasis added). This overlap was deemed "sufficiently 'substantial and concrete'" to warrant transfer." *Id.*; *see also* Transfer Order, MDL No. 2873 (J.P.M.L. June. 2, 2025), ECF No. 3536 at 1–2 (transferring *City of Savannah* because a *single* case in the AFFF MDL involved the City of Savannah's water supply); Transfer Order, MDL No. 2873 (J.P.M.L. Apr. 2, 2019), ECF No. 384 at 1 (transferring State of New York and State of Ohio in part because "at least three contamination sites identified in these complaints . . . already are at issue . . . in the MDL"); Transfer Order, MDL No. 2873 (J.P.M.L. June 7, 2021), ECF No. 1020 (transfer appropriate in *Nessel* where plaintiff had identified common contamination sites in both its "AFFF" and "non-AFFF" complaints).

Here, the alleged contamination sites at issue in *Weirton I, II, and III* are *identical*. All three cases involve alleged contamination to the same water treatment facility located on the same property owned by Plaintiffs located in Brooke County, West Virginia. With identical Plaintiffs and claims involving the same water source, *Weirton III* doesn't just meet the "clear overlap" threshold articulated by the Panel—it defines it, with a factual basis that mirrors the applicable standard in every meaningful way. As such, it would be "untenable" for Plaintiffs to maintain

separate non-AFFF and AFFF complaints due to the substantial and concrete overlap between the claims. *See also* Transfer Order, MDL No. 2873 (J.P.M.L. Oct. 5, 2025), ECF No. 691 at 2 ("Plaintiff could have asserted all of these claims in the same action, but instead chose to split these claims across two actions. It would be inefficient for these actions to proceed separately and potentially prejudicial to the parties.").

**C.** ***Weirton III* is a "related case[]" under AFFF MDL CMO 1 and is therefore subject to pretrial consolidation.**

Transfer of *Weirton III* is also independently warranted because it squarely meets the definition of a "related case[]" under Case Management Order No. 1 ("CMO 1"). In CMO 1, Judge Gergel ordered the pretrial consolidation of all "related cases," stating:

> This Order shall govern . . . **all related cases** (i.e., civil actions where plaintiff(s) allege injuries or damages caused by groundwater contaminated with **chemicals found in aqueous film-forming foam products**) originally filed in this Court . . . including related cases filed in . . . this Court after the date of th[e] Order."

CMO 1 ¶ 1 (emphasis added).

This Panel has further articulated the contours of a "related case" and the scope of this MDL, finding, for instance, that "MDL No. 2873 involves allegations that aqueous film-forming foams (AFFFs) used at airports, military bases, or other locations to extinguish liquid fuel fires caused the release of perfluorooctane sulfonate (**PFOS**) and/or perfluorooctanoic acid (**PFOA)** into **local groundwater and contaminated drinking water supplies**." Transfer Order, MDL No. 2873 (J.P.M.L. Mar. 27, 2020), ECF No. 620 at 1 (citing *In re Aqueous Film-Forming Foams Prods. Liab. Litig. (In re AFFF)*, 357 F. Supp. 3d 1391, 1396 (J.P.M.L. 2018)). Likewise, in its initial Transfer Order, this Panel found that the at-issue cases "share factual questions concerning the toxicity of **PFOA** and **PFOS** and their effects on human health; the chemical properties of these substances and their propensity to **migrate** in groundwater supplies; the knowledge of the

AFFF manufacturers regarding the dangers of PFOA and PFOS." Transfer Order, MDL No. 2873 (J.P.M.L. Dec. 7, 2018), ECF No. 239 at 3.

*Weirton III* plainly meets the definition of a "related case[]" subject to consolidation in the AFFF MDL under CMO 1.  It is a civil action where Plaintiffs allege injuries or damages caused by water contaminated with PFOA and PFOS—the same "chemicals found in aqueous film-forming foam products" that have been at the center of the AFFF MDL.  For instance, Plaintiffs in *Weirton III* specifically allege that **PFOA and PFOS have been found in their water supply**:

> Samples taken from the Water Sources confirmed the presence of multiple PFAS compounds in the Weirton Water Sources, including both the groundwater well and the **Ohio River**, including but not limited to **PFOA, PFOS**, PFHxS, and PFHxA.

*Weirton III*, ¶¶ 201–202 (emphasis added).  Plaintiffs go on to claim that the maximum containment levels for PFOA (4.0 ppt) and PFOS (4.0 ppt) recently set by the EPA "are **below** the current levels in Plaintiffs' Water Sources," and therefore "to comply with EPA's new standards, Plaintiffs will be obligated to construct significant additional treatment infrastructure for PFAS removal."  *Id.* ¶ 196–197, 202 (emphasis added).

Therefore, Plaintiffs in *Weirton III* allege damages cause by water contaminated with PFOA and PFOS—the very chemicals "found in aqueous film-forming foam products," that fall within the scope of "related cases" subject to consolidation under CMO 1.[10]  As such, transfer to the AFFF is appropriate.  *See* Transfer Order, MDL No. 2873 (J.P.M.L. Oct. 5, 2020), ECF No. 691 ("In our order centralizing this litigation, we held that the District of South Carolina was an

---

[10] In *Weirton I*, Plaintiffs explicitly make the connection between their alleged AFFF contamination and PFOA and PFOS contamination, stating "[b]eginning in the 1960s, the Manufacturing Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products that used fluorosurfactants containing either PFOS, PFOA, or the chemical precursors that degrade into PFOS and PFOA." *Weirton I*, ¶ 136; *see also id.* ¶ 139 ("On information and belief, the Manufacturing Defendants designed, manufactured, marketed, distributed, and/or sold PFAS and/or products containing PFAS, including AFFF, which were discharged into the environment in and around Weirton, West Virginia.").

appropriate Section 1407 forum for actions in which plaintiffs allege that AFFF products . . .caused the release of PFOS and/or PFOA into local groundwater and contaminated drinking water supplies."); Transfer Order, MDL No. 2873 (J.P.M.L. Apr. 1, 2021), ECF No. 960 ("This litigation involves allegations that aqueous film-forming foams (AFFFs) . . . caused the release of perfluorooctane sulfonate (PFOS) and/or perfluorooctanoic acid (PFOA) into local groundwater and contaminated drinking water supplies.").

**D.      This Panel should transfer *Weirton III* because its AFFF disclaimer is "contrary to law."**

Transfer of *Weirton III* to the AFFF MDL is further warranted because it implicates the legal and procedural concerns addressed in CMO 36.   In that order, Judge Gergel rejected the use of AFFF disclaimers to avoid MDL consolidation, finding such disclaimers "contrary to law," and explicitly requested that the JPML transfer such cases to the AFFF MDL to enable him "to efficiently oversee and manage these cases."  CMO 36, pp. 1–3.

CMO 36 was issued in response to a growing trend of plaintiffs that "have sought to avoid the MDL and/or federal jurisdiction by denying, disclaiming, or omitting allegations concerning exposure to AFFF."  *Id.*  at 1.  Judge Gergel, relying on *State of Maryland v. 3M et al*., 130 F.4th 380 (4th Cir. 2025), found efforts to disclaim AFFF contamination are "are contrary to law." *Id.* Specifically, Judge Gergel found that "[t]he record in this MDL and its related discovery has demonstrated that plaintiffs cannot, at the pleading stage, easily isolate personal injuries allegedly caused by AFFF as opposed to personal injuries allegedly caused by non-AFFF PFAS." *Id.* Recognizing the efficiency and inconsistencies that result from such pleading tactics, Judge Gergel explicitly made "a suggestion and request to the JPML that all such cases . . . be transferred to this Court to enable it to efficiently oversee and manage these cases." *Id.* at 2.

15

The *Weirton III* disclaimer falls squarely within the intent of CMO 36. Plaintiffs "expressly disclaim recovery for PFAS contamination from aqueous film-forming foam (AFFF)," *Weirton III* at 44, n. 11, despite alleging injuries and damages caused by PFOA and PFOS—chemicals that are central to the AFFF MDL.[11] Or, as put simply by Plaintiffs, "PFOS, PFOA, and/or their chemical precursors, were used in the manufacture of aqueous film-forming foam ('AFFF') AFFF products." *Weirton II* ¶ 11. This disclaimer, then, is precisely the type of pleading maneuver that CMO 36 was designed to address.

In light of Judge Gergel's findings and his explicit request to the JPML, transfer of *Weirton III* is not only consistent with MDL precedent—it is necessary to ensure efficient case management and prevent plaintiffs from fragmenting litigation through artificial distinctions. The disclaimer in *Weirton III* should not be an impediment to transfer, and the case should be consolidated with the MDL to promote judicial economy and consistent adjudication.

## IV. CONCLUSION

For the reasons stated above, this Panel should Transfer *Weirton III* to the AFFF MDL.

---

[11] *See* Transfer Order, MDL No. 2873 (J.P.M.L. Mar. 27, 2020), ECF No. 620 ("MDL No. 2873 involves allegations that aqueous film-forming foams (AFFFs) used at airports, military bases, or other locations to extinguish liquid fuel fires caused the release of perfluorooctane sulfonate (**PFOS**) and/or perfluorooctanoic acid (**PFOA)** into **local groundwater and contaminated drinking water supplies**.") (citing *In re Aqueous Film-Forming Foams Prods. Liab. Litig. (In re AFFF)*, 357 F. Supp. 3d 1391, 1396 (J.P.M.L. 2018)) (emphasis added); Transfer Order, MDL No. 2873 (J.P.M.L. Dec. 7, 2018), ECF No. 239, p. 3 (finding that the at-issue cases "share factual questions concerning the toxicity of **PFOA** and **PFOS** and their effects on human health; the chemical properties of these substances and their propensity to **migrate** in groundwater supplies; the knowledge of the AFFF manufacturers regarding the dangers of PFOA and PFOS") (emphasis added).

Dated: October 6, 2025

Respectfully Submitted,

*/s/ Travis L. Brannon*
Travis L. Brannon (WVSB # 12504)
K&L Gates LLP
K&L Gates Center 210 Sixth Avenue
Pittsburgh, PA 15222
Tel: (412) 355-7443
travis.brannon@klgates.com

Cy A. Hill, Jr. (WVSB #8816)
Jennifer A. Lynch  (WVSB #12140)
Eric T. Frye (WVSB #10770)
Cipriani & Werner PC
Laidley Tower
500 Lee Street East Suite 900
Charleston, WV 25301
Tel: (304) 341-0500
Fax: (304) 341-0507
Chill@c-Wlaw.Com
Jlynch@c-Wlaw.Com
Efrye@c-Wlaw.Com

*Counsel for Heritage Thermal Services, Inc.*
*n/k/a Arcwood Environmental – East*
*Liverpool, Inc. and Heritage Transport LLC,*
*n/k/a Arcwood Transport, LLC*

## CERTIFICATE OF SERVICE

I certify that on this 6th day of October 2025, I served the foregoing with the Clerk of Court by using the CM/ECF System, which will serve a copy to all counsel of record who have entered an appearance in this case through the Court's ECF system.

*/s/ Travis L. Brannon*
Travis L. Brannon