# EXHIBIT 1

# 5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Services, Inc. Et Al

US District Court Docket

United States District Court, West Virginia Northern

(Wheeling)

Update Now

**This case was retrieved on 10/05/2025**

## ▾Header

**Case Number:** 5:25cv126
**Date Filed:** 06/11/2025
**Assigned To:** District Judge John Preston Bailey
**Nature of Suit:** Other Statutory Actions (890)
**Cause:** Real Property Tort to Land
**Lead Docket:** None
**Other Docket:** None
**Jurisdiction:** Federal Question

**Class Code:** Open
**Statute:** 42:9607
**Jury Demand:** Both
**Demand Amount:** $0
**NOS Description:** Other Statutory Actions



10/6/25, 11:30 AM

5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Services, Inc. Et Al

Document:     5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15    Results list

Fitzsimmons Law Firm, PLLC
1609 Warwood Ave
Wheeling, WV 26003
USA
(304) 277-1700 Fax: (304) 277-1705
Email:Clayton@fitzsimmonsfirm.Com

Daniel J. Guida
LEAD ATTORNEY;ATTORNEY TO BE NOTICED

3374 Main St
Weirton, WV 26062
USA
304-748-1213 Fax: 304-748-1225 Email:Guidalaw@comcast.Net

James L. Simpson
LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
USA
(212) 397-1000 Email:Jsimpson@napolilaw.Com

Mark A. Colantonio
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Fitzsimmons Law Firm, PLLC
1609 Warwood Ave
Wheeling, WV 26003
USA
304-277-1700 Fax: 304-277-1705
Email:Mark@fitzsimmonsfirm.Com

10/6/25, 11:30 AM                   5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Services, Inc. Et Al

Document:   5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15    Results list

Napoli Shkolnik PLLC

400 Broadhollow Drive Suite 305

Melville, NY 11747

USA

(212) 397-1000 Fax: (646) 843-7603

Email:Pnapoli@nsprlaw.Com

Robert P. Fitzsimmons

LEAD ATTORNEY;ATTORNEY TO BE NOTICED

Fitzsimmons Law Firm, PLLC

1609 Warwood Ave

Wheeling, WV 26003

USA

304-277-1700 Fax: 304-277-1705

Email:Bob@fitzsimmonsfirm.Com

City of Weirton, West Virginia
**Plaintiff**

Clayton J Fitzsimmons

LEAD ATTORNEY;ATTORNEY TO BE NOTICED

Fitzsimmons Law Firm, PLLC

1609 Warwood Ave

Wheeling, WV 26003

USA

(304) 277-1700 Fax: (304) 277-1705

Email:Clayton@fitzsimmonsfirm.Com

Daniel J. Guida

LEAD ATTORNEY;ATTORNEY TO BE NOTICED

3374 Main St

Weirton, WV 26062

USA

304-748-1213 Fax: 304-748-1225 Email:Guidalaw@comcast.Net

Document:    5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15    Results list

Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
USA
(212) 397-1000 Email:Jsimpson@napolilaw.Com

Mark A. Colantonio
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Fitzsimmons Law Firm, PLLC
1609 Warwood Ave
Wheeling, WV 26003
USA
304-277-1700 Fax: 304-277-1705
Email:Mark@fitzsimmonsfirm.Com

Paul J. Napoli
LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED
Napoli Shkolnik PLLC
400 Broadhollow Drive Suite 305
Melville, NY 11747
USA
(212) 397-1000 Fax: (646) 843-7603
Email:Pnapoli@nsprlaw.Com

Robert P. Fitzsimmons
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Fitzsimmons Law Firm, PLLC
1609 Warwood Ave
Wheeling, WV 26003
USA

10/6/25, 11:30 AM

5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Services, Inc. Et Al

Document: 5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15 | Results list

**Defendant**

LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Cipriani & Werner PC
Laidley Tower, Suite 900 500 Lee Street East
Charleston, WV 25301
USA
(304) 341-0500 Fax: (304) 341-0507 Email:Chill@c-Wlaw.Com

Eric T. Frye
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Cipriani & Werner PC
Laidley Tower, Suite 900 500 Lee Street East
Charleston, WV 25301
USA
(304) 341-0500 Fax: (304) 341-0507 Email:Efrye@c-Wlaw.Com

Jennifer A. Lynch
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Cipriani & Werner, P.C.
500 Lee Street E. Suite 900
Charleston, WV 25301
USA
304-341-0500 Email:Jlynch@c-Wlaw.Com

Travis L. Brannon
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
K & L Gates LLP
K&L Gates Center 210 Sixth Avenue
Pittsburgh, PA 15222-2613
USA
(412) 355-6500 Fax: (412) 355-6501
Email:Travis.Brannon@klgates.Com

10/6/25, 11:30 AM

5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Services, Inc. Et Al

Document:    5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15    Results list

Laidley Tower, Suite 900 500 Lee Street East
Charleston, WV 25301
USA
(304) 341-0500 Fax: (304) 341-0507 Email:Chill@c-Wlaw.Com

Jennifer A. Lynch
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Cipriani & Werner, P.C.
500 Lee Street E. Suite 900
Charleston, WV 25301
USA
304-341-0500 Email:Jlynch@c-Wlaw.Com

Travis L. Brannon
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
K & L Gates LLP
K&L Gates Center 210 Sixth Avenue
Pittsburgh, PA 15222-2613
USA
(412) 355-6500 Fax: (412) 355-6501
Email:Travis.Brannon@klgates.Com

Eric T. Frye
ATTORNEY TO BE NOTICED
Cipriani & Werner PC
Laidley Tower, Suite 900 500 Lee Street East
Charleston, WV 25301
USA
(304) 341-0500 Fax: (304) 341-0507 Email:Efrye@c-Wlaw.Com

Precesion Finning & Bending, Inc.
**Defendant**

Maximillian Nogay
LEAD ATTORNEY;ATTORNEY TO BE NOTICED

10/6/25, 11:30 AM
5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Services, Inc. Et Al

Document:    5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15    Results list

USA
304-830-9071 Email:Mnogay@flannerygeorgalis.Com

William J. Ihlenfeld , II
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Flannery Georgalis LLC
Post Office Box 9
Wheeling, WV 26003
USA
681-293-2595 Email:Wihlenfeld@flannerygeorgalis.Com

Illinois Tool Works Inc.
**Defendant**
Trivium Packaging USA Inc.
**Defendant**
NEWCHEM, LLC
**Defendant**
Deltech Resin LLC
**Defendant**
Titanium Metals Corporation
**Defendant**

Charlotte A.H. Norris
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Jenkins Fenstermaker PLLC
West Virginia Post Office Box 2688 Huntington
Huntington, WV 25726
USA
304-523-2100 Email:Chn@jenkinsfenstermaker.Com

Laura Kerr
LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED
Stoel Rives LLP
760 Sw 9th Avenue, Suite 3000
Portland, OR 97205

10/6/25, 11:30 AM
5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Services, Inc. Et Al

Document: 5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15 | Results list

Maren R. Norton
LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED
Stoel Rives LLP
600 University Street Ste. 3600
Seattle, WA 98101
USA
206-386-7607 Fax: 206-386-7500
Email:Maren.Norton@stoel.Com

Robert H. Sweeney , Jr.
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Jenkins Fenstermaker, PLLC
325 8th Street
Huntington, WV 25701
USA
(304) 523-2100 Fax: (304) 523-2347
Email:Rhs@jenkinsfenstermaker.Com

Ergon-West Virginia, Inc.
**Defendant**

Brandon M. White
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Perkins Coie LLP
District Of Columbia 700 13th Street Nw Suite 600
Washington, DC 20005
USA
202-654-6206 Fax: 202-654-6211
Email:Bmwhite@perkinscoie.Com

Christopher B. Wilson
LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED
Perkins Coie LLP
110 N. Wacker Drive, Suite 3400
Chicago, IL 60606

Document:    5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

|  |  |
|---|---|
|  | LeAnn Johnson Koch |
|  | LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED |
|  | Perkins Coie LLP - Washington DC |
|  | 700 13th Street, N.W. Suite 800 |
|  | Washington, DC 20005-3960 |
|  | USA |
|  | 202-654-6209 Fax: 202-654-6211 |
|  | Email:Leannjohnson@perkinscoie.Com |
|  |  |
|  | Spencer A. Gottlieb |
|  | LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED |
|  | Perkins Coie LLP |
|  | 110 N. Wacker Drive, Suite 3400 |
|  | Chicago, IL 60606 |
|  | USA |
|  | 312-324-8400 Fax: 312-324-9400 |
|  | Email:Sgottlieb@perkinscoie.Com |
| Ball Corporation |  |
| **Defendant** |  |
| Sonoco Products Company | Patrick S. Casey |
| **Defendant** | LEAD ATTORNEY;ATTORNEY TO BE NOTICED |
|  | Casey & Chapman, PLLC |
|  | 1140 Chapline Street |
|  | Wheeling, WV 26003 |
|  | USA |
|  | 304-231-2405 Fax: 866-296-2591 |
|  | Email:Pscasey@cclawpllc.Com |
| Ardagh Metal Packaging USA Corp. |  |
| **Defendant** |  |

10/6/25, 11:30 AM                        5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Services, Inc. Et Al

Document:     5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15     Results list

One American Square, Suite 2900
Indianapolis, IN 46282
USA
317-236-2247 Fax: 317-236-2219
Email:Amy.Berg@icemiller.Com

Brent W. Huber
LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED
Ice Miller, LLP
One American Square, Suite 2900
Indianapolis, IN 46282
USA
317-236-5942 Fax: 317-236-2219
Email:Brent.Huber@icemiller.Com

Marc E. Williams
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Nelson Mullins Riley & Scarborough LLP
Po Box 1856 949 Third Avenue, Suite 200
Huntington, WV 25719
USA
304-526-3501 Fax: 304-526-3541
Email:Marc.Williams@nelsonmullins.Com

Wallover Oil Company Incorporated          Connor E. Phalon
**Defendant**                              LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED
                                           Herold Law, P.A.
                                           25 Independence Blvd., Suite 301
                                           Warren, NJ 07059
                                           USA
                                           908-679-5011 Fax: 908-647-7721
                                           Email:Cphalon@heroldlaw.Com

10/6/25, 11:30 AM

5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Services, Inc. Et Al

Document: 5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15 | Results list

Robinson & McElwee, PLLC - Clarksburg

Po Box 128

Clarksburg, WV 26302-0128

USA

304-622-5022 Fax: 304-622-5065 Email:Jak@ramlaw.Com

John J. McAleese , III

LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED

Herold Law, P.A.

150 N. Radnor-Chester Road Suite F-200

Radnor, PA 19087

USA

610-977-2023 Fax: 908-647-7721

Email:Jmcaleese@heroldlaw.Com

| Messer LLC | Arianna Webb |
| **Defendant** | LEAD ATTORNEY;ATTORNEY TO BE NOTICED |

Spilman Thomas and Battle, PLLC

300 Kanawha Blvd E

Charleston, WV 25301

USA

304-340-3865 Email:Awebb@spilmanlaw.Com

Clifford F Kinney , Jr

LEAD ATTORNEY;ATTORNEY TO BE NOTICED

Spilman Thomas & Battle

300 Kanawha Blvd, East

Charleston, WV 25301

USA

304-340-3844 Email:Ckinney@spilmanlaw.Com

Niall A Paul

10/6/25, 11:30 AM
5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Services, Inc. Et Al

Document: 5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15 | Results list

Charleston, WV 25301

USA

(304) 340-3874 Fax: (304) 340-3801

Email:Npaul@spilmanlaw.Com

| Transmontaigne Terminaling Inc. | Benjamin R Wilson |
| **Defendant** | LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED |

Holland & Knight LLP

1650 Market Stret Suite 3300

Philadelphia, PA 19103

USA

212-252-9600 Email:Benjamin.Wilson@hklaw.Com

Justin Kadoura

LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED

Holland & Knight LLP

1650 Market Street Suite 3300

Philadelphia, PA 19103

USA

215-252-9600 Email:Justin.Kadoura@hklaw.Com

Lauren Emily Motes

LEAD ATTORNEY;ATTORNEY TO BE NOTICED

Dinsmore & Shohl, LLP

215 Don Knotts Blvd. Ste 310

Morgantown, WV 26501

USA

304-296-1100 Fax: 304-296-6116

Email:Lauren.Motes@dinsmore.Com

Lindsey M. Saad

LEAD ATTORNEY;ATTORNEY TO BE NOTICED

10/6/25, 11:30 AM

5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Services, Inc. Et Al

Document: 5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15 | Results list

|  | USA |
|  | 304-225-1461 Fax: 304-296-6116 |
|  | Email:Lindsey.Saad@dinsmore.Com |

FX Minerals Processing, Inc.
**Defendant**

| Marathon Petroleum Corporation | Michelle L. Gorman |
| [Terminated: 09/19/2025] | LEAD ATTORNEY;ATTORNEY TO BE NOTICED |
| **Defendant** | Lewis Brisbois Disgaard & Smith, LLP |
|  | 3054 Pennsylvania Avenue |
|  | Weirton, WV 26062 |
|  | USA |
|  | (304) 224-2006 Fax: (304) 224-2263 |
|  | Email:Michelle.Gorman@lewisbrisbois.Com |

| Kentak Products Company | Erik A. Schramm , Jr. |
| **Defendant** | LEAD ATTORNEY;ATTORNEY TO BE NOTICED |
|  | Hanlon, Duff, Estadt, McCormick & Schramm Co., LPA |
|  | 46457 National Rd., West |
|  | St. Clairsville, OH 43950 |
|  | USA |
|  | (740) 695-1444 Fax: (740) 695-1563 |
|  | Email:Eschrammjr@ohiovalleylaw.Com |
|  |  |
|  | Erik A. Schramm , Sr. |
|  | LEAD ATTORNEY;ATTORNEY TO BE NOTICED |
|  | Hanlon, Estadt, McCormick & Schramm Co., LPA |
|  | 46457 National Road West |
|  | St. Clairsville, OH 43950 |
|  | USA |
|  | 740-695-1444 Fax: 740-695-1563 |
|  | Email:Hems@ohiovalleylaw.Com |

10/6/25, 11:30 AM

5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Services, Inc. Et Al

Document:   5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15 | Results list

46457 National Road West
St. Clairsville, OH 43950
USA
Email:Bickford.Kyle@gmail.Com

Seaforth Mineral & Ore Company, Inc.

**Defendant**

Dacar Industries, Inc.

**Defendant**

Pyramid Oil Field Services LLC

**Defendant**

Matec Industries, Inc.

**Defendant**

Marathon Petroleum Company LP

**Defendant**

Martin A. Shelton
LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED
Lewis Brisbois Bisgaard & Smith LLP
600 Peachtree Street Ne
Atlanta, GA 30308
USA
404-348-8585 Fax: 404-467-8845
Email:Martin.Shelton@lewisbrisbois.Com

Michelle L. Gorman
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Lewis Brisbois Disgaard & Smith, LLP
3054 Pennsylvania Avenue
Weirton, WV 26062
USA
(304) 224-2006 Fax: (304) 224-2263
Email:Michelle.Gorman@lewisbrisbois.Com

10/6/25, 11:30 AM

5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Services, Inc. Et Al

Document:   5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15 | Results list

| | Availability | # | Date | Proceeding Text | Source |
|---|---|---|---|---|---|
| ☐ | Free | 1 | 06/11/2025 | COMPLAINT against All Defendants, filed by City of Weirton, West Virginia, Weirton Area Water Board. Filing Fee $405. Receipt #AWVNDC-4164584 (Attachments: # 1 Civil Cover Sheet)(lmm) (Entered: 06/11/2025) | |
| ☐ | Free | 2 | 06/11/2025 | Corporate Disclosure Statement by City of Weirton, West Virginia, Weirton Area Water Board. (Fitzsimmons, Clayton) (Entered: 06/11/2025) | |
| ☐ | Free | 3 | 06/11/2025 | Corporate Disclosure Statement by City of Weirton, West Virginia, Weirton Area Water Board. (Fitzsimmons, Clayton) (Entered: 06/11/2025) | |
| ☐ | Free | 5 | 06/12/2025 | MOTION for Leave to Appear Pro Hac Vice of Paul J. Napoli by City of Weirton, West Virginia, Weirton Area Water Board. (Colantonio, Mark) (Entered: 06/12/2025) | |
| ☐ | Free | 6 | 06/12/2025 | MOTION for Leave to Appear Pro Hac Vice of James L. Simpson by City of Weirton, West Virginia, Weirton Area Water Board. (Colantonio, Mark) (Entered: 06/12/2025) | |
| ☐ | Online | 7 | 06/13/2025 | PHV Filing fee for Paul J. Napoli and James L. Simpson: $ 400.00, receipt number 500003813 (lmm) (Entered: 06/13/2025) | |
| ☐ | Free | 8 | 06/16/2025 | ORDER granting 6 Motion for Leave to Appear Pro Hac Vice for James L. Simpson. Signed by District Judge John Preston Bailey on 6/16/25. (lmm) (Entered: 06/16/2025) | |
| ☐ | Free | 10 | 06/24/2025 | ORDER granting 5 Motion for Leave to Appear Pro Hac Vice Paul J. Napoli. Signed by District Judge John Preston Bailey on 6/24/25. (lmm) (Entered: 06/24/2025) | |
| ☐ | Free | 11 | 07/11/2025 | SUMMONS Returned Executed as to Chrome Deposit Corporation served on 7/1/2025; Dacar Industries, Inc. served on 7/1/2025; Ergon-West Virginia, Inc. served on 7/1/2025; FX Minerals Processing, Inc. served on 7/1/2025; Heritage Thermal Services, Inc. served on 7/1/2025; Heritage Transport LLC served on 7/1/2025; Kentak Products Company served on 7/1/2025; Marathon Petroleum Corporation served on 7/1/2025; Matec Industries, Inc. served on 7/1/2025; Messer LLC served on 7/1/2025; Precesion Finning & Bending, Inc. served on 7/1/2025; Pyramid Oil Field Services LLC served on 7/1/2025; Seaforth Mineral & Ore Company, Inc. served on 7/1/2025; Sonoco Products Company served on 7/1/2025; Titanium Metals Corporation served on 7/1/2025; Transmontaigne | |

10/6/25, 11:30 AM

5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Services, Inc. Et Al

Document:    5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15  |  Results list

| | | | | |
|---|---|---|---|---|
| | | | | Sonoco Products Company waiver sent on 7/16/2025, answer due 9/15/2025. (Casey, Patrick) (Entered: 07/16/2025) |
| ☐ | Free | 13 | 07/17/2025 | SUMMONS Returned Executed as to Heritage Transport LLC on 7/1/25. (Imm) (Entered: 07/17/2025) |
| ☐ | Free | 14 | 07/18/2025 | NOTICE of Appearance by Maximillian Fitzsimmons Nogay on behalf of Precesion Finning & Bending, Inc. (Nogay, Maximillian) (Entered: 07/18/2025) |
| ☐ | Free | 15 | 07/21/2025 | NOTICE of Appearance by Erik A. Schramm, Sr on behalf of Kentak Products Company (Schramm, Erik) (Entered: 07/21/2025) |
| ☐ | Free | 16 | 07/21/2025 | STIPULATION Extension of Time to Answer, Move, or Otherwise Plead by Kentak Products Company. (Schramm, Erik) (Entered: 07/21/2025) |
| ☐ | Free | 17 | 07/21/2025 | Corporate Disclosure Statement by Kentak Products Company. (Schramm, Erik) (Entered: 07/21/2025) |
| ☐ | Free | 18 | 07/24/2025 | STIPULATION FOR EXTENSION OF TIME TO ANSWER, MOVE OR OTHERWISE PLEAD by Titanium Metals Corporation. (Sweeney, Robert) (Entered: 07/24/2025) |
| ☐ | Free | 19 | 07/25/2025 | VERIFICATION OF ATTORNEY ADMISSION for Charlotte A.H. Norris. (Imm) (Entered: 07/25/2025) |
| ☐ | Free | 20 | 07/25/2025 | STIPULATION To Extend The Time For Defendant TransMontaigne Operating GP, L.L.C. To Respond To The Complaint by Transmontaigne Terminaling Inc.. (Saad, Lindsey) (Entered: 07/25/2025) |
| ☐ | Free | 21 | 07/28/2025 | STIPULATION to Extend Time pursuant to LR Civ P 12.01 by Precesion Finning & Bending, Inc.. (Nogay, Maximillian) (Entered: 07/28/2025) |
| ☐ | Free | 22 | 07/28/2025 | Corporate Disclosure Statement by Precesion Finning & Bending, Inc.. (Nogay, Maximillian) (Entered: 07/28/2025) |
| ☐ | Online | 23 | 07/28/2025 | VERIFICATION OF ATTORNEY ADMISSION for Attorney Benjamin Wilson. (Imm) (Entered: 07/28/2025) |
| ☐ | Online | 24 | 07/29/2025 | WAIVER OF SERVICE Returned Executed by City of Weirton, West Virginia, Weirton Area Water Board. Heritage Thermal Services, Inc. waiver sent on 7/15/2025, answer due 9/15/2025. (Fitzsimmons, Clayton) (Entered: 07/29/2025) |
| ☐ | Online | 25 | 07/29/2025 | WAIVER OF SERVICE Returned Executed by City of Weirton, West Virginia, Weirton Area Water Board. Heritage Transport LLC waiver sent |

10/6/25, 11:30 AM

5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Services, Inc. Et Al

Document:   5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15 | Results list

| | | | | |
|---|---|---|---|---|
| | | | Finning & Bending, Inc. (Ihlenfeld, William) (Entered: 07/30/2025) | |
| ☐ | Online | 27 | 08/05/2025 | WAIVER OF SERVICE Returned Executed by City of Weirton, West Virginia, Weirton Area Water Board. Ball Corporation waiver sent on 8/1/2025, answer due 10/30/2025. (Fitzsimmons, Clayton) (Entered: 08/05/2025) | |
| ☐ | Free | 28 | 08/06/2025 | STIPULATION Extending Chrome Deposit Corporations Time to Respond to Complaint by Chrome Deposit Corporation. (Williams, Marc) (Entered: 08/06/2025) | |
| ☐ | Online | 29 | 08/06/2025 | NOTICE of Appearance by Marc E. Williams on behalf of Chrome Deposit Corporation (Williams, Marc) (Entered: 08/06/2025) | |
| ☐ | Free | 30 | 08/08/2025 | Corporate Disclosure Statement by Transmontaigne Terminaling Inc.. (Saad, Lindsey) (Entered: 08/08/2025) | |
| ☐ | Online | 31 | 08/08/2025 | MOTION for Leave to Appear Application for Admission Pro Hac Vice for Justin Kadoura by Transmontaigne Terminaling Inc.. (Saad, Lindsey) (Entered: 08/08/2025) | |
| ☐ | Online | 32 | 08/08/2025 | MOTION for Leave to Appear Application for Admission Pro Hac Vice for Benjamin Wilson by Transmontaigne Terminaling Inc.. (Saad, Lindsey) (Entered: 08/08/2025) | |
| ☐ | Online | 33 | 08/08/2025 | PHV Filing fee for Attorneys Kadoura and Wilson: $ 400.00, receipt number 500003854 (Imm) (Entered: 08/08/2025) | |
| ☐ | Free | 34 | 08/11/2025 | Mail from Secretary of State returned re 11 Summons as to Dacar Chemical Products Company. Returned as Undeliverable. (Imm) (Entered: 08/11/2025) | |
| ☐ | Free | 35 | 08/11/2025 | Mail from Secretary of State returned re 11 Summons as to MacTec Industries, Inc. Returned as Undeliverable. (Imm) (Entered: 08/11/2025) | |
| ☐ | Online | 37 | 08/14/2025 | ORDER granting 31 Motion for Leave to Appear Pro Hac Vice for Justin Kadoura. Signed by District Judge John Preston Bailey on 8/14/25. (Imm) (Entered: 08/14/2025) | |
| ☐ | Online | 38 | 08/19/2025 | NOTICE of Appearance by Jeffrey A. Kimble on behalf of Wallover Oil Company Incorporated (Kimble, Jeffrey) (Entered: 08/19/2025) | |
| ☐ | Online | 39 | 08/19/2025 | STIPULATION to Extend time to Respond to Complaint by Wallover Oil Company Incorporated. (Kimble, Jeffrey) (Entered: 08/19/2025) | |

Document: 5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15 | Results list

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Online | 41 | 08/19/2025 | Corporate Disclosure Statement by Messer LLC identifying Corporate Parent Messer North America, Inc., Corporate Parent Messer Industries USA, Inc. for Messer LLC.. (Paul, Niall) (Main Document 41 replaced on 8/20/2025 to flatten PDF) (lmm). (Entered: 08/19/2025) | |
| ☐ | Online | 42 | 08/20/2025 | MOTION for Leave to Appear Pro Hac Vice for Amy S. Berg by Chrome Deposit Corporation. (Williams, Marc) (Entered: 08/20/2025) | |
| ☐ | Online | 43 | 08/20/2025 | MOTION for Leave to Appear Pro Hac Vice for Brent W. Huber by Chrome Deposit Corporation. (Williams, Marc) (Entered: 08/20/2025) | |
| ☐ | Online | 44 | 08/20/2025 | ORDER granting 32 Motion for Leave to Appear Pro Hac Vice for Benjamin Wilson. Signed by District Judge John Preston Bailey on 8/20/25. (lmm) (Entered: 08/20/2025) | |
| ☐ | Runner | 45 | 08/20/2025 | PHV Filing fee for Attorneys Berg and Huber: $ 400.00, receipt number 100004057. (lmm) (Entered: 08/20/2025) | |
| ☐ | Online | 46 | 08/22/2025 | ORDER granting 42 Motion for Leave to Appear Pro Hac Vice for Attorney Berg. Signed by District Judge John Preston Bailey on 8/22/25. (lmm) (Entered: 08/22/2025) | |
| ☐ | Online | 47 | 08/22/2025 | ORDER granting 43 Motion for Leave to Appear Pro Hac Vice for Attorney Huber. Signed by District Judge John Preston Bailey on 8/22/25. (lmm) (Entered: 08/22/2025) | |
| ☐ | Online | 48 | 08/22/2025 | NOTICE of Appearance by Brandon M. White on behalf of Ergon-West Virginia, Inc. (White, Brandon) (Entered: 08/22/2025) | |
| ☐ | Online | 49 | 08/22/2025 | Corporate Disclosure Statement by Ergon-West Virginia, Inc. identifying Corporate Parent Ergon, Inc. for Ergon-West Virginia, Inc... (White, Brandon) (Entered: 08/22/2025) | |
| ☐ | Online | 50 | 08/22/2025 | STIPULATION extending time to respond to complaint by Ergon-West Virginia, Inc.. (White, Brandon) (Entered: 08/22/2025) | |
| ☐ | Online | 51 | 08/25/2025 | STIPULATION Extension of Time to Answer, Move, or Otherwise Plead by Kentak Products Company. (Schramm, Erik) (Entered: 08/25/2025) | |
| ☐ | Online | 52 | 08/25/2025 | STIPULATION to Extend Time pursuant to LR Civ P 12.01 by Precesion Finning & Bending, Inc.. (Nogay, Maximillian) (Entered: 08/25/2025) | |
| ☐ | Online | 53 | 08/25/2025 | Corporate Disclosure Statement by Titanium Metals Corporation identifying Corporate Parent Precision Castparts Corp. for Titanium Metals | |

10/6/25, 11:30 AM

5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Services, Inc. Et Al

Document:    5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15 | Results list

| | | | | |
|---|---|---|---|---|
| | | | | Ergon-West Virginia, Inc.. (White, Brandon) (Entered: 08/26/2025) |
| ☐ | Online | 55 | 08/26/2025 | MOTION for Leave to Appear Pro Hac Vice for Spencer A. Gottlieb by Ergon-West Virginia, Inc.. (White, Brandon) (Entered: 08/26/2025) |
| ☐ | Runner | 56 | 08/26/2025 | PHV Filing fee for Attorneys Wilson and Gottlieb: $ 400.00, receipt number 500003867 (lmm) (Entered: 08/26/2025) |
| ☐ | Online | 57 | 08/27/2025 | ORDER granting 54 Motion for Leave to Appear Pro Hac Vice for Attorney Wilson. Signed by District Judge John Preston Bailey on 8/27/25. (lmm) (Entered: 08/27/2025) |
| ☐ | Online | 58 | 08/27/2025 | ORDER granting 55 Motion for Leave to Appear Pro Hac Vice for Attorney Gottlieb. Signed by District Judge John Preston Bailey on 8/27/25. (lmm) (Entered: 08/27/2025) |
| ☐ | Free | 59 | 08/28/2025 | JOINT STIPULATION by Sonoco Products Company. (lmm) (Entered: 08/28/2025) |
| ☐ | Free | 60 | 08/29/2025 | DEFENDANT MESSER LLC'S ANSWER to 1 Complaint AND DEMAND FOR JURY TRIAL by Messer LLC.(Webb, Arianna) (Entered: 08/29/2025) |
| ☐ | Free | 61 | 08/29/2025 | ANSWER to 1 Complaint by Titanium Metals Corporation.(Norris, Charlotte) (Entered: 08/29/2025) |
| ☐ | Online | 62 | 08/29/2025 | MOTION for Leave to Appear Pro Hac Vice for LeAnn Johnson Koch by Ergon-West Virginia, Inc.. (White, Brandon) (Entered: 08/29/2025) |
| ☐ | Online | 64 | 09/02/2025 | VERIFICATION OF ATTORNEY ADMISSION for Attorneys Norton and Kerr. (lmm) (Entered: 09/02/2025) |
| ☐ | Runner | 65 | 09/02/2025 | PHV Filing fee for Attorney Koch: $ 200.00, receipt number 500003868 (lmm) (Entered: 09/02/2025) |
| ☐ | Online | 66 | 09/08/2025 | Corporate Disclosure Statement by Wallover Oil Company Incorporated. (Kimble, Jeffrey) (Entered: 09/08/2025) |
| ☐ | Free | 67 | 09/08/2025 | First MOTION for Leave to Appear Pro hac vice Maren R. Norton by Titanium Metals Corporation. (Attachments: # 1 Proposed Order)(Norris, Charlotte) (Entered: 09/08/2025) |
| ☐ | Free | 68 | 09/08/2025 | First MOTION for Leave to Appear Pro hac vice Laura M. Kerr by Titanium Metals Corporation. (Attachments: # 1 Proposed Order)(Norris, Charlotte) (Entered: 09/08/2025) |
| ☐ | Runner | 78 | 09/08/2025 | PHV Filing fee for Attorneys Norton & Kerr: $ 400.00, receipt number 500003874 (lmm) (Entered: 09/19/2025) |

Document: 5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

| | | | | |
|---|---|---|---|---|
| ☐ | Online | 70 | 09/15/2025 | NOTICE of Appearance by Michelle L. Gorman on behalf of Marathon Petroleum Corporation (Gorman, Michelle) (Entered: 09/15/2025) |
| ☐ | Free | 71 | 09/16/2025 | NOTICE of Appearance by Travis L. Brannon on behalf of Heritage Thermal Services, Inc., Heritage Transport LLC (Brannon, Travis) (Entered: 09/16/2025) |
| ☐ | Free | 72 | 09/16/2025 | NOTICE of Appearance by Eric T. Frye on behalf of Heritage Thermal Services, Inc., Heritage Transport LLC (Frye, Eric) (Entered: 09/16/2025) |
| ☐ | Free | 73 | 09/16/2025 | STIPULATION Extending Chrome Deposit Corporations Time to Respond to Complaint by Chrome Deposit Corporation. (Williams, Marc) (Entered: 09/16/2025) |
| ☐ | Free | 74 | 09/18/2025 | MOTION to Dismiss by Wallover Oil Company Incorporated. (Attachments: # 1 Memorandum in Support, # 2 Certificate of Service)(Kimble, Jeffrey) (Entered: 09/18/2025) |
| ☐ | Free | 75 | 09/19/2025 | STIPULATION re 1 Complaint Joint by Heritage Thermal Services, Inc., Heritage Transport LLC. (Brannon, Travis) (Entered: 09/19/2025) |
| ☐ | Online | 76 | 09/19/2025 | STIPULATION OF DISMISSAL AND SUBSTITUTION OF PROPER PARTY AND EXTENSION TO RESPOND by Marathon Petroleum Corporation. (Gorman, Michelle) (Entered: 09/19/2025) |
| ☐ | Free | 77 | 09/19/2025 | STIPULATION AND AGREED ORDER OF DISMISSAL AND SUBSTITUTION. Marathon Petroleum Company LP added. Marathon Petroleum Corporation terminated. Marathon Petroleum Company LP answer due 9/30/2025. Signed by District Judge John Preston Bailey on 9/19/25. (lmm) (Entered: 09/19/2025) |
| ☐ | Online | 79 | 09/19/2025 | ORDER granting 67 Motion for Leave to Appear Pro Hac Vice for Attorney Norton. Signed by District Judge John Preston Bailey on 9/19/25. (lmm) (Entered: 09/19/2025) |
| ☐ | Online | 80 | 09/19/2025 | ORDER granting 68 Motion for Leave to Appear Pro Hac Vice for Attorney Kerr. Signed by District Judge John Preston Bailey on 9/19/25. (lmm) (Entered: 09/19/2025) |
| ☐ | Online | 81 | 09/23/2025 | MOTION for Leave to Appear Pro Hac Vice by Marathon Petroleum Company LP. (Gorman, Michelle) (Entered: 09/23/2025) |
| ☐ | Online | 82 | 09/23/2025 | Corporate Disclosure Statement by Marathon Petroleum Company LP identifying Corporate Parent Marathon Petroleum Corporation for |

10/6/25, 11:30 AM
5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Services, Inc. Et Al

Document:    5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15    Results list

| | | | | |
|---|---|---|---|---|
| | | | | Finning & Bending, Inc.. (Nogay, Maximillian) (Entered: 09/23/2025) |
| ☐ | Free | 84 | 09/23/2025 | Joint MOTION for Extension of Time to File Response/Reply to Defendant Wallover Oil Company Incorporated's 74 Motion to Dismiss by City of Weirton, West Virginia, Weirton Area Water Board. (Attachments: # 1 Attachment Stipulation, # 2 Proposed Order Order)(Colantonio, Mark) Modified on 9/24/2025 to link to correct entry (lmm). (Entered: 09/23/2025) |
| ☐ | Free | 85 | 09/24/2025 | ORDER GRANTING 84 EXTENSION. Defendant's reply to 74 MOTION to Dismiss due by 11/6/2025. Signed by District Judge John Preston Bailey on 9/24/25. (lmm) (Entered: 09/24/2025) |
| ☐ | Online | 86 | 09/24/2025 | MOTION for Leave to Appear Pro Hac Vice John J. McAleese, III by Wallover Oil Company Incorporated. (Kimble, Jeffrey) (Entered: 09/24/2025) |
| ☐ | Online | 87 | 09/24/2025 | MOTION for Leave to Appear Pro Hac Vice Connor E. Phalon by Wallover Oil Company Incorporated. (Kimble, Jeffrey) (Entered: 09/24/2025) |
| ☐ | Runner | 88 | 09/24/2025 | PHV Filing fee for J. McAleese, III and C. Phalon: $ 400.00, receipt number 100004076. (ag) (Entered: 09/24/2025) |
| ☐ | Runner | 89 | 09/24/2025 | PHV Filing fee for Martin A. Shelton: $ 200.00, receipt number 500003884 (lmm) (Entered: 09/24/2025) |
| ☐ | Online | 90 | 09/25/2025 | ORDER granting 87 Motion for Leave to Appear Pro Hac Vice of Connor E. Phalon. Signed by District Judge John Preston Bailey on 9/25/2025. (ag) (Entered: 09/25/2025) |
| ☐ | Online | 91 | 09/25/2025 | ORDER granting 86 Motion for Leave to Appear Pro Hac Vice of John J. McAleese, III. Signed by District Judge John Preston Bailey on 9/25/2025. (ag) (Entered: 09/25/2025) |
| ☐ | Online | 92 | 09/25/2025 | ORDER granting 81 Motion for Leave to Appear Pro Hac Vice of Martin A. Shelton. Signed by District Judge John Preston Bailey on 9/25/2025. (ag) (Entered: 09/25/2025) |
| ☐ | Free | 93 | 09/26/2025 | MOTION to Stay all proceedings until after the Judicial Panel on Multidistrict Litigation Decision on Transfer by Heritage Thermal Services, Inc., Heritage Transport LLC. (Attachments: # 1 Proposed Order)(Brannon, Travis) (Entered: 09/26/2025) |
| ☐ | Free | 94 | 09/26/2025 | Memorandum in Support re 93 MOTION to Stay all proceedings until after the Judicial Panel on Multidistrict Litigation Decision on Transfer filed by |

10/6/25, 11:30 AM

5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Services, Inc. Et Al

Document: 5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

**14** of 15    Results list

| | | | | | |
|---|---|---|---|---|---|
| | | | | has determined the listed action(s) is not appropriate for inclusion in this MDL. See Rule 7.1(b)(i) -- WVN/5:25-cv-00126, MOE/4:25-cv-01394. Signed by Clerk of the Panel James V. Ingold on 9/26/2025. Associated Cases: MDL No. 2873, MOE/4:25-cv-01394, WVN/5:25-cv-00126. (kac) (Entered: 09/26/2025) | |
| | Free | 96 | 09/29/2025 | ORDER denying 93 Motion to Stay. Signed by District Judge John Preston Bailey on 9/29/25. (lmm) (Entered: 09/29/2025) | |
| | Online | 97 | 09/29/2025 | Corporate Disclosure Statement by Chrome Deposit Corporation identifying Corporate Parent U.S. Steel Corporation, Corporate Parent Court Holdings Ltd. for Chrome Deposit Corporation.. (Williams, Marc) (Entered: 09/29/2025) | |
| | Online | 98 | 09/29/2025 | Corporate Disclosure Statement by Heritage Thermal Services, Inc., Heritage Transport LLC identifying Corporate Parent ARCWOOD ENVIRONMENTAL, INC. for Heritage Thermal Services, Inc... (Brannon, Travis) (Entered: 09/29/2025) | |
| | Online | 99 | 09/29/2025 | Corporate Disclosure Statement by Heritage Thermal Services, Inc., Heritage Transport LLC identifying Corporate Parent Arcwood Transport, Inc. for Heritage Transport LLC.. (Brannon, Travis) (Entered: 09/29/2025) | |
| | Free | 100 | 09/29/2025 | MOTION for Leave to File Excess Pages and corresponding Motion to Dismiss by Heritage Thermal Services, Inc., Heritage Transport LLC. (Attachments: # 1 Proposed Order Proposed Order re Motion to Extend Page Limit, # 2 Attachment Motion to Dismiss Referenced in Motion to Extend, # 3 Attachment Memo in Support of Motion to Dismiss)(Brannon, Travis) (Entered: 09/29/2025) | |
| | Free | 101 | 09/30/2025 | ORDER GRANTING 100 MOTION TO ENLARGE PAGE LIMIT FOR SUPPORTING MEMORANDUM OF LAW. Signed by District Judge John Preston Bailey on 9/30/25. (lmm) (Entered: 09/30/2025) | |
| | Free | 102 | 09/30/2025 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT by Marathon Petroleum Company LP. (Gorman, Michelle) (Entered: 09/30/2025) | |
| | Free | 103 | 09/30/2025 | Memorandum in Support re 102 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT filed by Marathon Petroleum Company LP. (Gorman, Michelle) (Entered: 09/30/2025) | |

Document:    5:25cv126, Weirton Area Water Board Et Al V. Heritage Thermal Servi...

| | | | | |
|---|---|---|---|---|
| ☐ | Online | 105 | 10/01/2025 | MEMORANDUM in Support of Motion to Dismiss by Transmontaigne Terminaling Inc. re 104 MOTION to Dismiss for Lack of Jurisdiction and for Failure to State a Claim . (Attachments: # 1 Exhibit Declaration in Support of Motion to Dismiss)(Saad, Lindsey) (Entered: 10/01/2025) | |

**Retrieve Document(s)**

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.

\*\*\* THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY \*\*\*

Order Runner Documents 🗗



About

Privacy Policy

Cookie Policy

Terms & Conditions

**RELX** ™

Copyright © 2025 LexisNexis.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA

WEIRTON AREA WATER BOARD and
CITY OF WEIRTON, WEST VIRGINIA,

     *Plaintiffs,*

-*vs* -

HERITAGE THERMAL SERVICES, INC.; HERITAGE
TRANSPORT LLC; PRECESION FINNING & BENDING,
INC.; ILLINOIS TOOL WORKS INC.; TRIVIUM
PACKAGING USA INC.; NEWCHEM, LLC; DELTECH
RESIN LLC; TITANIUM METALS CORPORATION; ERGON-
WEST VIRGINIA, INC.; BALL CORPORATION;SONOCO
PRODUCTS COMPANY; ARDAGH METAL PACKAGING
USA CORP.; CHROME DEPOSIT CORPORATION;
WALLOVER OIL COMPANY INCORPORATED; MESSER
LLC; TRANSMONTAIGNE TERMINALING INC.; FX
MINERALS PROCESSING, INC.; MARATHON PETROLEUM
CORPORATION; KENTAK PRODUCTS COMPANY;
SEAFORTH MINERAL & ORE COMPANY, INC.; DACAR
INDUSTRIES, INC.; PYRAMID OIL FIELD SERVICES LLC;
AND MATEC INDUSTRIES, INC.

     *Defendants.*

ELECTRONICALLY
FILED
6/11/2025
U.S. DISTRICT COURT
Northern District of WV

Civil Action No. 5:25-cv-126

Judge Bailey

**CERCLA COMPLAINT
42 U.S.C. §§ 9607(a) and
9613(f)(1)**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiffs, The Weirton Area Water Board and The City of Weirton,

West Virginia (hereinafter collectively "Plaintiffs"), and for their Complaint against the

Defendants HERITAGE THERMAL SERVICES, INC.; HERITAGE TRANSPORT LLC;

PRECESION FINNING & BENDING, INC.; ILLINOIS TOOL WORKS INC.; TRIVIUM

PACKAGING USA INC.; NEWCHEM, LLC; DELTECH RESIN LLC; TITANIUM METALS

CORPORATION; ERGON-WEST VIRGINIA, INC.; BALL CORPORATION; SONOCO

PRODUCTS COMPANY; ARDAGH METAL PACKAGING USA CORP.; CHROME

DEPOSIT CORPORATION; WALLOVER OIL COMPANY INCORPORATED; MESSER LLC; TRANSMONTAIGNE TERMINALING INC.; FX MINERALS PROCESSING, INC.; MARATHON PETROLEUM CORPORATION; KENTAK PRODUCTS COMPANY; SEAFORTH MINERAL & ORE COMPANY, INC.; DACAR INDUSTRIES, INC.; PYRAMID OIL FIELD SERVICES LLC; AND MATEC INDUSTRIES, INC. (hereinafter collectively, "Defendants"), aver and state as follows:

## INTRODUCTION

1.      Plaintiffs own and/or operate a public water system utility serving close to 25,000 residential, commercial, industrial, public authority, and resale customers in the City of Weirton, West Virginia and surrounding areas of Hancock and Brooke Counties, West Virginia.

2.      Plaintiffs own and/or operate a water treatment plant located in Brooke County, West Virginia (the "Weirton Water Treatment Plant"), which utilizes as its water sources an intake located in the Ohio River in Brooke County and a well located near the Ohio River in Brooke County (the "Water Sources").  Plaintiffs draw and treat water from the Water Sources and then provide the water as drinking water to Plaintiffs' customers.

3.      In this civil action, Plaintiffs seek to recover the substantial costs associated with removing synthetic per- and polyfluoroalkyl substances ("PFAS") existing in Plaintiffs' Water Sources as a result of Defendants' tortious conduct.

4.      Plaintiffs bring this action to address the existence of PFAS in water drawn from its Water Sources, to recover costs associated with removal of PFAS from water drawn from its Water Sources, to abate an ongoing nuisance these chemicals constitute, and for such other relief to ensure Plaintiffs' continued compliance with all applicable state and federal laws and regulations concerning water.

5.      Plaintiffs further bring this action to seek, *inter alia*, available remedies under the Comprehensive Environmental Response, Compensation, and Liability Act; abatement of an ongoing nuisance; to recover compensatory and all other damages and relief, including all necessary funds to compensate Plaintiffs for the costs of investigating, monitoring, evaluating, abating, and remediating the presence of PFAS in water drawn from its Water Sources, including constructing, installing, operating, and maintaining the treatment facilities and equipment required to remove PFAS from public water supplies; and for such other damages and relief the Court may order.

6.      Defendants' businesses are located within the groundwater protection area for Plaintiffs' Water Sources and/or within hydrological features of Plaintiffs' Water Sources that utilized materials containing PFAS in their business operations, and who tortiously used, released, stored, handled, and/or disposed of PFAS and PFAS containing materials in such a manner that has caused PFAS to migrate into and exist in Plaintiffs' Water Sources, thereby damaging and injuring Plaintiffs.

7.      Upon information and belief, PFAS associated with and/or emanating from Defendants' business operations migrated into the hydrological features and Water Sources utilized by Plaintiffs.

8.      Defendants, as the responsible parties, and not Plaintiffs, its taxpayers, or its customers, should bear all past, present, and future costs of addressing the above presence and removal of PFAS from the Water Sources.

9.      Upon information and belief, Defendants are responsible, negligently, intentionally and/or in some actionable manner, jointly and severally, for the events and happenings referred to herein, and caused and continue to cause injuries and damages legally

thereby to Plaintiffs, as alleged, either through Defendants' own conduct or through the conduct of their agents, servants or employees, or due to the ownership, maintenance or control of the instrumentality causing them injury, or in some other actionable manner.

## PARTIES

### Plaintiffs

10.     Plaintiff The Weirton Area Water Board ("Water Board") is a governmental entity and/or agency and/or sub-agency of Weirton, which was created in 2001 by City Ordinance #1317 under applicable West Virginia law, and is vested with the authority and responsibility to operate, supervise, manage, and control a water utility system pursuant to West Virginia Code Chapter 8, Article 19. The Water Board's principal place of business is located in Weirton, Brooke County, West Virginia.

11.     Plaintiff The City of Weirton ("Weirton") is a municipal corporation of the State of West Virginia which may sue and plead in its own name. W. Va. Code § 7-1-1(a) (2008); *Kucera v. City of Wheeling*, 153 W. Va. 531, 170 S.E.2d 217 (1969). Weirton's principal place of business is located in Weirton, West Virginia.

12.     Plaintiffs own and/or operate a municipal public waterworks system which consists of, *inter alia*, the Water Sources, the Weirton Water Treatment Plant, reservoir, water tanks, distribution lines, booster stations, and all appurtenant facilities and properties (collectively the "Water System").

13.     Plaintiffs own, operate, and/or maintain the Water System for the benefit of the public and are charged with delivering safe, clean, and high-quality water that meets State and federal standards to close to 25,000 residents and businesses in Hancock and Brooke Counties, West Virginia.

4

**The Heritage Defendants**

14.     Defendant Heritage Thermal Services, Inc. ("HTS") is a Delaware corporation with its principal place of business in Indianapolis, Indiana. Its registered agent for service of process is The Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

15.     Defendant Heritage Transport, LLC ("Heritage Transport") is an Indiana corporation with its principal place of business in Indianapolis, Indiana. Defendant Heritage Transport is licensed to do business in the State of West Virginia and its registered agent for service of process is C T Corporation System, 5098 Washington Street West, Suite 407, Charleston, WV 25313-1561.

16.     Defendants HTS and Heritage Transport will be collectively referred to in this Complaint as "HTS." HTS includes all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, tradenames, and organizational unities of any kind, their predecessors, and assigns, including, and their present officers, directors, employees, agents, representatives, and any other person(s) acting on its behalf.

17.     At all relevant times through the present, HTS owned and operated an incinerator facility located in East Liverpool, Columbiana County, Ohio (the "HTS Thermal Facility").

18.     The HTS Thermal Facility is located adjacent to the Ohio River, within the floodplain of the Ohio River, and directly upstream from the Plaintiffs' Water Sources, which Plaintiffs utilize and rely upon to provide drinking water to the residents and businesses of Hancock and Brooke Counties.

19.     At all relevant times herein, the HTS Thermal Facility received and incinerated thousands of shipments of materials containing PFAS and hazardous waste.

5

20.    At all relevant times herein, HTS transported and arranged for transport of PFAS to the HTS Thermal Facility for disposal and/or incineration.

21.    Upon information and belief, PFAS contained in materials incinerated by HTS at the HTS Thermal Facility migrated into the water, soil, and air in the areas surrounding the HTS facility, including the Ohio River, soils in Hancock and/or Brooke Counties, West Virginia, and into Plaintiffs' Water Sources.

22.    Upon information and belief, as a direct and proximate result of HTS' tortious actions, omissions, and conduct in the operation of the HTS Thermal Facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

23.    HTS has a long history of environmental and contamination-related violations.

24.    In October 2018, the Environmental Protection Agency ("EPA") entered a settlement with HTS arising from several years of Clean Air Act violations at the HTS Thermal Facility, including violations for failing to maintain minimum temperatures specified in its Clean Air Act permit "on numerous days." The maintenance of adequate temperatures is particularly critical for the incineration of PFAS since PFAS chemicals do not break down even at normal incineration temperatures, much less at temperatures below permitted levels.

25.    In November 2018, the Vermont Department of Environmental Conservation cancelled plans to send PFAS-containing materials to HTS Thermal Facility, citing concerns about the facility's environmental violations and poor operating conditions.

26.    On December 18, 2019, an EPA official wrote to the East Liverpool City Council to express "concern over the incineration of PFAS waste" at HTS Thermal Facility and informed the Council that the EPA was "evaluating whether the incineration of PFAS is a violation of the Facility's permit."

6

27.     Upon information and belief, in 2018 the Heritage Thermal facility entered into a consent decree with the United States Department of Justice ("DOJ") regarding an explosion at the Heritage Thermal Facility and what DOJ called "systemic failures to comply" with environmental laws.

28.     According to the EPA, in an approximate period between 2019-2022, HTS violated its compliance requirements under the Clean Air Act in eight (8) of twelve (12) quarters.

29.     At all times material herein, HTS purposefully directed its actions toward the State of West Virginia; carried out is actions, conduct, and omissions in the operation of its HTS Thermal Facility with the knowledge that its actions would cause tortious injury and harm in West Virginia, including Brooke and Hanock Counties; caused direct and foreseeable tortious harms and injuries in West Virginia, including Brooke and Hancock Counties; and caused direct tortious effects, injuries, and damages to Plaintiffs in West Virginia, including Brooke and Hancock Counties.

### Defendant Chrome Deposit Corporation

30.     Defendant Chrome Deposit Corporation ("Chrome Deposit") is an Indiana corporation with its principal place of business located in Indiana.

31.     Chrome Deposit is registered to do business in West Virginia and its registered agent for service of process is Henry Gund, 6640 Melton Road, Portage, IN 46368. At all times material herein, Defendant Chrome Deposit was transacting business in West Virginia and its business activities directly and foreseeable caused tortious injury in West Virginia.

32.     Upon information and belief, at all relevant times herein, Chrome Deposit was engaged in the business of providing products and services for use in the steel and/or aluminum manufacturing industry.

7

33.     Upon information and belief and at all relevant times herein, Chrome Deposit owned and operated a facility in Weirton, West Virginia ("Chrome Deposit Facility"), which engaged in the chrome plating of rolls used in the steel industry and electro-discharge texturing.

34.     Upon information and belief, the Chrome Deposit Facility utilized materials containing PFAS in order to add resistance to wear and corrosion, and to impart heat tolerance, lubricity, conductivity, and certain aesthetic properties to the products and services it provided. This is consistent with the utilization across various industries that utilized PFAS as wetting agents, fume suppressants, dispersion products, coating additives, corrosion inhibitors, and/or to achieve certain product attributes.

35.     The chrome plating industry has received considerable regulatory and scientific attention as a source of PFAS in the environment, since PFAS have been used for decades as agents to suppress emissions of hexavalent chromium, a known carcinogen. Source identification studies conducted by the EPA and state agencies have concluded that the metal finishing industry represents a significant source of PFAS emissions, and that within the metal finishing industry, facilities performing chrome plating and associated operations represent the dominant sources.

36.     Upon information and belief, the Chrome Deposit Facility was located within the groundwater protection area for Plaintiffs' Water Sources and as a direct and proximate result of Chrome Deposit's tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

**Defendant Precesion Finning and Bending, Inc.**

37.     Defendant Precesion Finning and Bending, Inc. ("Precesion") is an Ohio corporation with its principal place of business in Ohio.

38.     Defendant Precesion's registered agent for service of process is David M. Stacey, 16639 St. Clair Ave., East Liverpool, OH 43920.

39.     Upon information and belief and at all relevant times herein, Precesion was engaged in the business of manufacturing, fabrication and bending of pipes, tubes and hard rubber components and owned and operated a facility within the floodplain of the Ohio River, and located directly upstream from the Plaintiffs' Water Sources, which Plaintiffs utilize and rely upon to provide drinking water to the residents and businesses of Hancock and Brooke Counties.

40.     Upon information and belief and at all relevant times herein, Precesion utilized PFAS in its metal pipe and tube-related processes because of their durability, non-stick properties, chemical strength, and enhancement to resistance and corrosion.

41.     Precesion's facility had a hydrological connection to Plaintiffs' Water Sources and as a direct and proximate result of Precesion's tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

42.     At all times material herein, Precesion purposefully directed its actions toward the State of West Virginia; carried out is actions, conduct, and omissions in the operation of its facility with the knowledge that its actions would cause tortious injury and harm in West Virginia, including Brooke and Hanock Counties; caused direct and foreseeable tortious harms and injuries in West Virginia, including Brooke and Hancock Counties; and caused direct tortious effects, injuries, and damages in West Virginia, including Brooke and Hancock Counties.

## Defendant Illinois Tool Works, Inc.

43.     Defendant Illinois Tool Works Inc. ("Illinois Tool Works") is a multi-industry Delaware manufacturing corporation with its principal place of business in Illinois.

9

44.     Illinois Tool Works is registered to do business in West Virginia and its registered agent for service of process is CT Corporation System, 5098 Washington St. W., STE 407, Charleston, WV 25313. At all times material herein, Defendant Illinois Tool Works and its predecessors were transacting business in West Virginia and its business activities directly and foreseeably caused tortious injury in West Virginia.

45.     Illinois Tool Works provides services to several industry segments including automotive, construction products, food equipment, polymers & fluids, specialty products, test and measurement, electronics, and welding.

46.     Upon information and belief Illinois Tool Works acquired Signode Metals Group ("Signode") in or around 1986 and assumed all debts, liabilities, and obligations.

47.     Upon information and belief, for many years Signode owned and operated a facility located on Birch Drive in Weirton, West Virginia, where Signode serviced the metal industry, including providing protective packaging solutions, and utilized PFAS or PFAS containing materials in its operations.

48.     Upon information and belief, the Signode facility located on Birch Drive in Weirton closed in 2001.

49.     Upon information and belief, Signode's Birch Drive facility relocated to Three Springs Drive, Weirton, West Virginia in 2016, and currently operates under the name of Illinois Tool Works Fleetwood-Signode, where it engages in engineering, manufacturing, including injection-molded plastic products for industrial and commercial use.

50.     Illinois Tool Works's facilities at Birch Drive, and Three Springs Drive, Weirton, West Virginia, are both within the groundwater protection area for Plaintiffs' Water Sources and, as a direct and proximate result of Illinois Tool Work's tortious actions, omissions, and conduct

10

in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

### Defendant Trivium Packaging USA, Inc.

51.     Defendant Trivium Packaging USA Inc. ("Trivium Packaging") is a Delaware corporation with its principal place of business in Ohio.

52.     Trivium Packaging is registered to do business in West Virginia and its registered agent for service of process is CT Corporation System, 5098 Washington St. W., STE 407, Charleston, WV 25313. At all times material herein, Trivium Packaging was transacting business in West Virginia and its business activities directly and foreseeably caused tortious injury in West Virginia.

53.     Trivium Packaging is a metal packaging manufacturing company. Upon information and belief, Trivium Packaging owned and/or operated a facility located on Birch Drive Weirton, West Virginia ("Trivium Packaging Facility"), which closed on or around May 31, 2023.

54.     Upon information and belief, the Trivium Packaging Facility specialized in the production of laminated steel products for use in metal packaging, and PFAS were utilized in this process to enhance durability and resistance to corrosion.

55.     The Trivium Packaging facility was located within the groundwater protection area for Plaintiffs' Water Sources and as a direct and proximate result of Trivium's tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

### Defendant NEWCHEM, LLC

56.     Defendant NEWCHEM, LLC ("NEWCHEM") is an Ohio corporation with its principal place of business located in New Cumberland, West Virginia.

11

57.     NEWCHEM is registered to do business in West Virginia and its registered agent for service of process is CT Corporation System, 5098 Washington St. W., STE 407, Charleston, WV 25313. At all times material herein, NEWCHEM was transacting business in West Virginia and its business activities directly and foreseeably caused tortious injury in West Virginia.

58.     At all relevant times herein, NEWCHEM owned and operated a facility located in New Cumberland, Hancock County, West Virginia (the "NEWCHEM Facility").

59.     NEWCHEM performs custom organic chemical manufacturing, solvent recovery and drying, as well as production of powder biocides at the NEWCHEM Facility.

60.     Upon information and belief, NEWCHEM purchased the NEWCHEM Facility from Thiokol Specialty Chemicals Division.

61.     NEWCHEM entered into an Administrative Order on Consent with EPA on May 15, 2002, for violations of the Resource and Conservation Recovery Act ("RCRA"), 42 U.S.C. § 6901, *et seq.*, and for repeated violations of RCRA over the course of eleven (11) years, including the release of hazardous waste.

62.     A 2014 inspection by the West Virginia Department of Environmental Protection found the Groundwater Protection Plan for the NEWCHEM Facility was inadequate.

63.     Upon information and belief, PFAS were utilized at the NEWCHEM Facility.

64.     The NEWCHEM Facility is located adjacent to the Ohio River, within the floodplain of the Ohio River, and directly upstream from, and has a hydrological connection to, Plaintiffs' Water Sources. As a direct and proximate result of NEWCHEM's tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

12

**Defendant Deltech Resin LLC**

65.     Defendant Deltech Resin LLC ("Deltech Resin") is a Delaware corporation with its principal place of business in Louisiana.

66.     Deltech Resin was registered to do business in West Virginia until its authority was revoked for failing to file an annual report.  Deltech Resin's registered agent for service of process is CT Corporation System, 5098 Washington St. W., STE 407, Charleston, WV 25313. At all times material herein, Deltech Resin was transacting business in West Virginia and its business activities directly and foreseeable caused tortious injury in West Virginia.

67.     Deltech Resin operates in the specialty chemicals industry and is known for the production of high-performance aromatic monomers and specialized crystal polystyrene. Deltech Resin's products and services span across multiple industries including construction, coatings and adhesives, sealants, and elastomers.

68.     Upon information and belief, Deltech Resin owns and operates a facility on Ohio River Blvd., New Cumberland, Hancock County, West Virginia ("Deltech Resin Facility").  At all relevant times herein, PFAS were utilized in the operations and processes at the Deltech Resin Facility.

69.     The Deltech Resin Facility is located adjacent to the Ohio River, within the floodplain of the Ohio River, and upstream from, and has a hydrological connection to, Plaintiffs' Water Sources. As a direct and proximate result of Deltech Resin's tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

**Defendant Titanium Metals Corporation**

70.     Defendant Titanium Metals Corporation ("Titanium Metals") is a Delaware corporation with its principal place of business in Oregon.

13

71.     Titanium Metals is registered to do business in Ohio and its registered agent for service of process is National Registered Agents, Inc., 4400 Easton Commons Way Suite 125, Columbus, OH 43219.

72.     Upon information and belief, Titanium Metals is one of the world's largest producers of titanium products for jet engines and other industries.

73.     Titanium Metals owns and operates a facility located on Titanium Way, Toronto, Ohio 43964 (the "Titanium Metals Facility").

74.     Titanium Metals conducts titanium sponge conversion, melting operations, rolling and forging, fabrication and finishing, and alloy development at the Titanium Metals Facility.

75.     Upon information and belief and at all relevant times herein, PFAS were utilized in the metal plating and finishing processes performed at the Titanium Metals Facility to add resistance to wear, corrosion, and heat, as well as to add lubricity, electrical conductance, and aesthetic properties to base materials.  This is consistent with the use of PFAS across this industry sector as wetting agents, fume suppressants, dispersion products, coating additives, corrosion inhibitors, and more.

76.     The Ohio Environmental Protection Agency ("Ohio EPA") has responded to numerous reports of spills at the Titanium Metals Facility; issued the facility at least two Notices of Violation, in 2020 and 2015, for violation of hazardous waste laws; and inspected the facility several times for compliance with the Clean Water Act.  The Titanium Metals Facility also self-reported violations of the Toxic Substances Control Act in 2006.

77.     The Titanium Metals Facility is located adjacent to the Ohio River, within the floodplain of the Ohio River, and upstream from Plaintiffs' Water Sources. As a direct and proximate result of Titanium Metals' tortious actions, conduct, and omissions in the operation of

its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

**Defendant Ergon-West Virginia, Inc.**

78.    Defendant Ergon-West Virginia, Inc. ("Ergon") is a Mississippi corporation with its principal place of business in Mississippi.

79.    Ergon is registered to do business in West Virginia and its registered agent for service of process is Alan Wall, P.O. Box 1639, Jackson, MS 39215. At all times material herein, Ergon was transacting business in West Virginia and its business activities directly and foreseeably caused tortious injury in West Virginia.

80.    Ergon owns and operates a 70-acre refinery, blending, and packaging facility ("the Congo Plant") located on the southern bank of the Ohio River, near the town of Newell in Hancock County, West Virginia.

81.    The Congo Plant was previously owned by the Quaker State Company and was purchased by Ergon in July 1997. Upon information and belief, Ergon assumed all debts and liabilities in the transaction relating to the Congo Plant. Upon information and belief, hazardous waste is present at the Congo Plant.

82.    In 1994 the United States Environmental Protection Agency ("EPA") issued a Unilateral Administrative Order to Quaker State, the facility's former owner, for violations of hazardous waste laws ("1994 UAO"). The site has since received significant attention and investigation for soil and groundwater contamination, particularly for benzene, toluene, ethylbenzene, and xylene, as required by the 1994 UAO. EPA also ordered an environmental covenant placed on the property to restrict human exposure to site-related contaminants; the covenant prohibits residential use of the property. Upon information and belief, PFAS were not investigated in the 1994 UAO and subsequent remedial work at the site.

15

83.     Upon information and belief, PFAS are used in the petroleum industry to protect high performance seals and gaskets, applied as coatings to minimize wear and reduce friction in pumps and valves, and other uses.

84.     Upon information and belief, Ergon performs paraffinic process and base oils at the Congo Plant which are used in a variety of applications, including automotive and industrial lubricants, grease, chemical process industries, and rubber applications, and operates the petroleum refinery.

85.     Upon information and belief, Ergon's operation of the Congo Plant utilizes very high-pressure hydrotreating, solvent dewaxing, vacuum distillation and residuum solvent de-asphalting to produce highly refined paraffinic process and base oils, bright stocks, ultra-low sulfur gasoline and diesel fuels, waxes and petroleum resins.

86.     The Congo Plant has been subject to several environmental enforcement actions, including under RCRA.

87.     Upon information and belief, the Congo Plant is located within the groundwater protection area for Plaintiffs' Water Sources. As a direct and proximate result of Ergon's tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

### Defendants Ball Corporation

88.     Defendant Ball Corporation is an Indiana corporation with its principal place of business in Colorado ("Ball").

89.     Defendant Ball is registered to do business in West Virginia and its registered agent for service of process is C T Corporation System, 5098 Washington Street West Suite 407, Charleston, WV 25313-1561. At all times material herein, Defendant Ball was transacting

16

business in West Virginia and its business activities directly and foreseeably caused tortious injury in West Virginia.

90.     Defendant Ball manufactures and supplies aluminum packaging for beverage, personal care and household products individually or through its affiliates and/or subsidiaries. These subsidiaries included Ball Metalpack, LLC f/k/a Ball Metal Food Container, LLC f/k/a Ball Metal Food Container Corp. (previously doing business at various times material hereto as Metal Food & Household Products Packaging Division, Americas; Metal Food Packaging; Metal Food Container Operations; Ball Metal Food Container Operations; and Ball Metal Beverage Container Group).

91.     Upon information and belief and until 2017, Ball Defendants owned and/or operated a facility located on Birch Drive Weirton, West Virginia (the "Ball Facility").

92.     Upon information and belief and at all relevant times herein, Defendant Ball used the Ball Facility to manufacture metal cans, was involved in the production of lithography and coating for flat tinplate, and utilized PFAS in these and other processes.

93.     Historically, PFAS were used in coatings and inks for grease resistance and durability during the lithography and coating of tinplate.

94.     Defendant Ball has a known history of using PFAS in its patents related to surface coatings.

95.     The Ball Facility was located within the groundwater protection area for Plaintiffs' Water Sources.  As a direct and proximate result of Ball Defendants' tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

17

**Defendant Sonoco Products Company**

96.     Defendant Sonoco Products Company ("Sonoco") is a South Carolina corporation with its principal place of business located in South Carolina.

97.     Defendant Sonoco is registered to do business in West Virginia and its registered agent for service of process is United Agent Group Inc., 126 East Burke Street, Martinsburg, WV 25401.

98.     Upon information and belief, Ball Metalpack, LLC f/k/a Ball Metal Food Container Corporation is/was a foreign limited liability company, which has/had its principal place of business in Colorado, and at all times material hereto was registered to do business in West Virginia and regularly and purposefully engaged in commerce and business activities in West Virginia through its operation of the Ball Facility in Weirton, Brooke County, West Virginia ("Ball Metalpack").

99.     Upon information and belief, Sonoco purchased Ball Metalpack in or around January 2022 and is a successor entity to it.

100.    The Ball Facility was located within the groundwater protection area for Plaintiffs' Water Sources.  As a direct and proximate result of Ball Metalpack's tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages, for which Sonoco is now liable.

**Defendant Ardagh Metal Packaging USA Corporation**

101.    Defendant Ardagh Metal Packaging USA Corp. ("Ardagh Metal") is a Delaware corporation with its principal place of business located in Illinois.

102.    Defendant Ardagh Metal is registered to do business in West Virginia and its registered agent for service of process is C T Corporation System, 5098 Washington Street West Suite 407, Charleston, WV 25313-1561.

103.    Upon information and belief and at all relevant times herein, Ardagh Metal owned and/or operated a metal manufacturing facility located on Birch Drive, Weirton, West Virginia, which included alumina and aluminum production and processing, and secondary smelting (the "Ardagh Metal Facility").

104.    Upon information and belief, the Ardagh Metal Facility manufactured aluminum cans, including operating coating lines.

105.    Upon information and belief, PFAS were utilized at the Ardagh Metal Facility in the manufacture of aluminum cans.

106.    The Ardagh Metal Facility is located within the groundwater protection area of Plaintiffs' Water Sources. As a direct and proximate result of Defendant Ardagh Metal's tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

### Defendant Wallover Oil Company Incorporated

107.    Defendant Wallover Oil Company Incorporated ("Wallover Oil") is an Ohio corporation with its principal place of business located in Ohio.

108.    Defendant Wallover Oil's registered agent for service of process is Dennis Switalski at 21845 Drake Road, Strongsville, OH 44149.

109.    Wallover Oil is a manufacturer of metalworking fluids and industrial lubricants.

110.    Upon information and belief, Wallover Oil owned and operated a facility located in East Liverpool, Ohio (the "Wallover Oil Facility").

111.    Upon information and belief, Wallover Oil produces and sells industrial lubricants and metalworking fluids into industrial markets throughout the United States and Canada.

112. Upon information and belief, PFAS were utilized at the Wallover Facility as lubricants and metalworking fluids. The uses include reducing friction, resisting extreme temperatures, providing chemical stability, and corrosion resistance.

113. The Wallover Oil Facility was located adjacent to the Ohio River, within the floodplain of the Ohio River, and upstream from Plaintiffs' Water Sources. As a direct and proximate result of Defendant Wallover Oil's tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

### Defendant TransMontaigne Operating GP L.L.C.

114. Defendant TransMontaigne Operating GP L.L.C. ("TransMontaigne") is a Delaware limited liability company and subsidiary and/or affiliated company of TransMontaigne Partners LLC, also a Delaware limited liability company headquartered in Denver, Colorado.

115. Defendant TransMontaigne's registered agent for service of process is Cogency Global Inc. at 850 New Burton Road, Suite 201, Dover, DE 19904.

116. Upon information and belief, TransMontaigne is an oil pipeline and terminal company that provides storage, transportation and related services for customers engaged in the distribution and marketing of refined petroleum (including gasolines, diesel fuels, heating oil, and jet fuels), crude oil, chemicals, fertilizers and other liquid products.

117. Upon information and belief, TransMontaigne owns and operates a facility located on River Road, East Liverpool, Ohio that has a storage capacity of approximately 228,465 barrels (the "TransMontaigne Facility").

118. Upon information and belief, the TransMontaigne Facility specializes in bulk storage of liquid products such as marine diesel, lube oils, and styrene.

20

119.    Upon information and belief, PFAS are linked to bulk fuel storage terminals and refineries because of their use in specialized coatings for their anti-corrosive and durability properties and were utilized at the TransMontaigne Facility.

120.    The TransMontaigne Facility is located adjacent to the Ohio River, within the floodplain of the Ohio River, and upstream from, and has a hydrological connection to, Plaintiffs' Water Sources. As a direct and proximate result of TransMontaigne's tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

### Defendant Messer LLC

121.    Defendant Messer LLC ("Messer") is a limited liability company organized and existing under the laws of Delaware, with its principal place of business in New Jersey.

122.    Defendant Messer is licensed to do business in West Virginia and its registered agent for service of process is Corporation Service Company at 808 Greenbrier Street, Charleston, WV 25311.

123.    Upon information and belief, Messer is the world's largest privately owned private gases business.

124.    Upon information and belief, Messer acquired Linde LLC and Linde Inc., companies engaged in the supply of industrial gases and equipment to industrial, food, medical, chemical and electronics industries.

125.    Upon information and belief Messer owns and operates a facility located on Dry Run Road, New Cumberland, West Virginia 26047 (the "Messer Facility").

126.    Upon information and belief, the Messer Facility produces liquid nitrogen, argon, krypton, and other industrial gases.

21

127.    Upon information and belief, the Messer Facility relies upon high-performance equipment, and PFAS are utilized in such equipment because of their resistance to extreme temperatures and pressure, and PFAS-based coatings are applied to such machinery to prevent corrosion, and PFAS were so utilized at the Messer facility.

128.    Upon information and belief, in June 2023 Messer agreed to pay a $1.9 million civil penalty to the EPA for Clean Water Act violations involving at least 186 unpermitted discharges into the Ohio River between 2016 and 2023 at the Messer Facility.

129.    The Messer Facility is located adjacent to the Ohio River, within the floodplain of the Ohio River, and upstream from, and has a hydrological connection to, Plaintiffs' Water Sources. As a direct and proximate result of Messer's tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

### Defendant FX Minerals Processing, Inc.

130.    Defendant FX Minerals Processing, Inc. ("FX Minerals") is a West Virginia corporation with its principal place of business in at 257 Kennedy Park Marina Road, Newell, West Virginia.

131.    Defendant FX Minerals' registered agent for service of process is its officer Joseph Olshefski at 257 Kennedy Park Marina Road, Newell, WV 26050.

132.    Upon information and belief, in 2015 FX minerals acquired a bauxite processing plant at or around 257 Kennedy Park Marina Road, Newell, West Virginia ("FX Minerals Facility").

133.    Upon information and belief, the use of PFAS within the mining industry is commonplace, including within industrial processes such as use of surfactants to enhance mineral recovery, and PFAS were utilized at the FX Minerals Facility.

134. The FX Minerals Facility is located adjacent to the Ohio River, within the floodplain of the Ohio River, and upstream from, and has a hydrological connection to, Plaintiffs' Water Sources. As a direct and proximate result of FX Minerals' tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

### Defendant Marathon Petroleum Corporation

135. Defendant Marathon Petroleum Corporation ("Marathon Petroleum") is a Delaware corporation with its principal place of business in Findlay, Ohio.

136. Defendant Marathon Petroleum's registered agent for service of process is CT Corporation System at 4400 Easton Commons Way, Suite 125, Columbus, OH 43219.

137. Marathon Petroleum owns and/ or operates an asphalt terminal operation located at 21st Street Wellsville, OH ("Marathon Facility").

138. Upon information and belief, PFAS are used as additives to asphalt for waterproofing performance and to increase durability. The Marathon Facility stores, processes, and distributes asphalt products. Liquid asphalt cement is stored in large, heated tanks and asphalt must remain in a liquid state for transport and use, with temperatures ranging from 275 degrees to 350 degrees to ensure the product can flow during loading and unloading. PFAS are used in tank coatings to maintain the integrity of the tanks at high temperatures.

139. The Marathon Facility was included in a 2015 settlement between Marathon Petroleum and EPA regarding Clean Air Act violations that included a $2.9 million civil penalty.

140. The Marathon Facility uses barges on the Ohio River to help transport asphalt and related products.

141. Upon information and belief, PFAS were utilized at the Marathon Facility, and the Marathon Facility is located adjacent to the Ohio River, within the floodplain of the Ohio

23

River, and upstream from, and has a hydrological connection to, Plaintiffs' Water Sources. As a direct and proximate result of Marathon Petroleum's tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

**Defendant Kentak Products Company**

142.    Defendant Kentak Products Company ("Kentak") is an Ohio corporation with its principal place of business located in East Liverpool, Ohio.

143.    Defendant Kentak's registered agent for service of process is Douglas A. Gomoll at 46037 Lori Lane, East Liverpool, OH 43920.

144.    Upon information and belief, Kentak manufactures plastic extrusion products including tubing and reinforced products to a variety of industries including plumbing, automotive, fluid power, laboratory, appliance, toy, marine and industrial.

145.    Upon information and belief, PFAS are used in plastic extrusion manufacturing.

146.    Kentak owns and/or operates a facility located at 1230 Railroad Street, East Liverpool, Ohio 43920 ("Kentak Facility").

147.    Upon information and belief, PFAS were utilized at the Kentak Facility and the Kentak Facility is located adjacent to the Ohio River, within the floodplain of the Ohio River, and upstream from, and has a hydrological connection to, Plaintiffs' Water Sources. As a direct and proximate result of Kentak's tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

**Defendant Seaforth Mineral & Ore Company, Inc.**

148.    Defendant Seaforth Mineral & Ore Company, Inc ("Seaforth Mineral") is an Ohio corporation with its principal place located in Cleveland, Ohio.

24

149. Defendant Seaforth Mineral's registered agent for service of process is SSSB Service Company, Inc. 1375 East 9th Street, Suite 900, Cleveland, OH 44114.

150. Upon information and belief, Seaforth Mineral processes and distributes fluorspar and related products at its facility located on Market Street, East Liverpool, Ohio 43920 ("Seaforth Facility") to a variety of industry segments.

151. Upon information and belief, fluorspar is a processed mineral composed mainly of calcium fluoride.

152. PFAS can be used in certain applications associated with fluorine-based chemical production, and fluorspar is a precursor used to produce PFAS.

153. Upon information and belief, PFAS were utilized at the Seaforth Facility and the Seaforth Facility is located adjacent to the Ohio River, within the floodplain of the Ohio River, and upstream from, and has a hydrological connection to, Plaintiffs' Water Sources. As a direct and proximate result of Seaforth Mineral's tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

**Defendant Dacar Chemical Products Company**

154. Defendant Dacar Chemical Products Company (d/b/a Dacar Industries, Inc.) ("Dacar") is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania.

155. Defendant Dacar's registered agent for service of process is its President, James R. Datesh, at 1007 McCartney Street, Pittsburgh, PA 15220-5406.

156. Upon information and belief, Dacar provides custom coating solutions to a variety of industries, such as aerospace, military, automotive, and consumer goods, and manufactures

25

specialty coatings such as non-stick coatings, high temperature coatings, and coatings designed to improve surface properties.

157.    Because of their ability to repel water, oil, and stains, and resistance to heat, PFAS have been used in paintings and coatings.

158.    Dacar owned and/or operated a chemical and blending facility located on Michigan Avenue, East Liverpool, Ohio (the "Dacar Facility").

159.    In September 1995, the Ohio Environmental Protection Agency ("Ohio EPA") investigated a reported spill at the Dacar Facility and discovered a tar like substance seeping out of the bank of Dry Run Creek and into it.

160.    Dry Run Creek is adjacent to the Dacar Facility, and from it flows approximately 300 feet where it empties into the Ohio River.

161.    In April 1997 Ohio EPA responded to a report and found "numerous" 55-gallon drums thrown down a hillside "in the immediate vicinity" of the Dacar Facility, and that two of the drums had leaked a black tarry liquid "onto the soils in the floodplain of the Ohio River."[1] Ohio EPA observed "at least" twenty (20) 55-gallon drums at the bottom of the hillside and two dead birds, coated in the black tarry material leaked from these drums.  Ohio EPA questioned the Dacar Facility Superintendent who stated that Dacar "had disposed of these drums over the years by rolling them down the hillside" towards the Dry Run Creek and that they "most likely contained a coal tar material."[2] Ohio EPA also saw disposed ceramic wastes which had been dumped on the hillside and slid into Dry Run Creek.

---

[1] Ohio EPA District Office Investigation Report, Spill Number 9704-15-1360.

[2] Ohio EPA District Office Investigation Report, Spill Number 9704-15-1360.

162.   Ohio EPA sampled the material leaked from these drums and found, among other things, polychlorinated biphenyls (aka PCBs).

163.   In July 2014, two dogs were found covered in a tar substance associated with the Dacar Facility.  The Ohio EPA investigated and reported the Dacar Facility was then a "large, dilapidated series of interconnected buildings…[p]ortions of which have collapsed and sections of the roof missing."[3] A strong chemical odor wafted from the Dacar Facility. The President of Dacar told Ohio EPA that the Dacar Facility was used to make various industrial calks and adhesives.

164.   Upon information and belief, the Dacar Facility produced treatments for wastewater treatment, adhesive for rigid insulation, clay slurry, coatings and additives for the steel industry, and automotive rustproofing.

165.   On July 16, 2014, Ohio EPA hazmat team investigated the dilapidated Dacar Facility and found "thousands of bags of various dry chemicals" on pallets; "[n]umerous 55-gallon drums loaded with waste chemicals"; the floors "had a buildup of waste material through[sic] most of the buildings"; "several open vats of asphalt material which appeared to be leaking tar to the ground"; "several open pits filled with the same tar like substance"; "piles of white powders in the open areas"; "[p]ortions of the buildings were unsafe to enter due to structural concerns"; "rooms packed with pallets of bagged chemicals in various stages of deterioration"; and "bags and cardboard containers holding materials were deteriorated from contact with moisture including precipitation."[4]

---

[3] Ohio EPA District Office Investigation Report, Spill Number 1407-15-1447.

[4] Ohio EPA District Office Investigation Report, Spill Number 1407-15-1447.

166.    On July 16, 2014, Ohio EPA reported that "the chemical like odor appeared to be emanating from a large collection of old adhesive caulk tubes", many of which were ruptured.

167.    On January 8, 2024, Ohio EPA issued Dacar a Notice of Violation for violations of Ohio's hazardous waste laws and rules at the Dacar Facility.

168.    Upon information and belief, Dacar utilized PFAS at the Dacar Facility and the Dacar Facility was located adjacent to the Ohio River, within the floodplain of the Ohio River, and upstream from, and had a hydrological connection to, Plaintiffs' Water Sources. As a direct and proximate result of Dacar's tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

### Defendant Pyramid Oil Field Services LLC

169.    Defendant Pyramid Oil Field Services LLC ("Pyramid Oil") is a limited liability company organized and existing under the laws of Ohio, having a principal place of business in Lisbon, Ohio.

170.    Defendant Pyramid Oil's registered agent for service of process is Larry R. Petrozzi at 7360 State Route 45, Lisbon, OH 44432.

171.    Upon information and belief, Pyramid Oil specializes in cleaning and maintenance services for the oil and gas industry.

172.    PFAS are used in cleaning products for the oil and gas industry to enhance dirt repellence, wetting, and spreading.

173.    Pyramid Oil owned and operated a facility on Harvey Street, East Liverpool, Ohio ("Pyramid Oil Facility").

174.    Upon information and belief, PFAS were utilized at the Pyramid Oil Facility and the Pyramid Oil Facility was located adjacent to the Ohio River, within the floodplain of the

28

Ohio River, and upstream from, and had a hydrological connection to, Plaintiffs' Water Sources. As a direct and proximate result of Pyramid Oil's tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

**Defendant Matec Industries, Inc.**

175.    Defendant Matec Industries, Inc. ("Matec") is an Ohio corporation with its principal place of business in East Liverpool, Ohio.

176.    Defendant Matec's registered agent for service of process is Sandra S. Mathias at 20133 Steubenville Pike Road, Hammondsville, OH 43930.

177.    Upon information and belief, Matec owned and operated a facility located on Railroad Street in East Liverpool, Ohio, where it specialized in steel fabrication for industrial applications and the production of ceramic-lined steel products (the "Matec Facility").

178.    Upon information and belief, PFAS were utilized at the Matec Facility in metal finishing processes to add resistance to wear, corrosion, and heat, as well as to add lubricity, electrical conductance, and aesthetic properties to base materials.  This is consistent with the utilization across this industry sector as wetting agents, fume suppressants, dispersion products, coating additives, corrosion inhibitors, and more.

179.    Upon information and belief, the Matec Facility is located adjacent to the Ohio River, within the floodplain of the Ohio River, and upstream from, and has a hydrological connection to, Plaintiffs' Water Sources.  As a direct and proximate result of Matec's tortious actions, conduct, and omissions in the operation of its facility, PFAS migrated into and exist in Plaintiffs' Water Sources, thereby causing Plaintiffs injury and damages.

29

## JURISDICTION AND VENUE

180.    Plaintiffs bring this civil suit, in part, pursuant to sections 42 U.S.C. §§ 9607(a), 9613(f)(1), and 9613(g) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

181.    Under 28 U.S.C. § 1331, 42 U.S.C. § 6972(a), and 42 U.S.C. § 9613(b) this Court has jurisdiction over Plaintiffs' CERCLA claims. This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367 because those claims are so related to the CERCLA claim as to form part of the same case or controversy.

182.    Venue as to each Defendant is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the Northern District of West Virginia and the property that is the subject of the action is situated in this District.

183.    This Court has personal jurisdiction over each Defendant because at all relevant times they committed acts in or outside West Virginia which caused tortious injury within the State of West Virginia, conducted business in the State of West Virginia, were engaged in substantial business activities in West Virginia and purposefully directed their actions toward the State of West Virginia, carry on continuous and systematic business in West Virginia, are registered to do business in West Virginia and have purposefully availed themselves of the privilege of conducting business within West Virginia, consented to be sued in the State of West Virginia by registering an agent for service of process, and/or because they have the requisite minimum contacts with the State of West Virginia necessary to constitutionally permit the Court to exercise jurisdiction.

## BACKGROUND AND FACTUAL ALLEGATIONS

### PFAS

184. PFAS are man-made manufactured chemical compounds containing fluorine and carbon. The fluorine-carbon bond is one of the strongest bonds in chemistry and provides PFAS their unique chemical properties. These synthetic chemicals have been used for decades in a wide range of industrial, commercial, and consumer products such as electroplating, non-stick cookware and industrial equipment, stain-resistant fabrics, the petroleum industry, and products that resist grease, water, and oil. In addition, their resistance to high temperatures and chemical reactions makes them ideal for chemical processing and manufacturing. In the oil and gas industry, PFAS are used for their surfactant properties to reduce surface tension, aid in pipeline maintenance and equipment cleaning, and allow for more efficient transportation. PFAS improve the performance and longevity of industrial lubricants and greases and reduce friction and wear in high-temperature environments. PFAS are also used in chemical manufacturing as surfactants and emulsifiers.

185. PFAS can enter the environment from industrial and commercial facilities that use PFAS to make other products, or through attempted destruction by incineration.

186. Due to their strong chemical bond, PFAS can remain in the environment, particularly in water, for many, many years and are therefore referred to colloquially as "forever chemicals" and are resistant to degradation due to light, water, and biological processes.

187. PFAS move easily through soil and into groundwater. Specific PFAS such as perfluorooctane sulfonic acid ("PFOS") dissolves easily in water, and thus is mobile and spreads quickly in the environment. PFOS also readily contaminates soils and leach from the soil into groundwater.

188. EPA has found that PFAS, which are water soluble, can be released during the manufacturing process through spills, emission vectors, and runoff, and as a component of industrial wastewater and solid waste.[5]

189. Conventional drinking water treatment processes are ineffective at removing PFAS from the water column.

190. PFAS also bioaccumulate, meaning that they tend to accumulate in organisms and move up the food chain.  PFAS bioaccumulate in numerous ways.  They are relatively stable once ingested, and bind to proteins and molecules in blood, tissues, and organs rather than fat like many other persistent chemicals.  These properties allow them to stay in the human body for long periods of time, and long-term exposure such as drinking water every day can cause significant accumulation even at low levels of exposure.  Thus, any newly ingested PFAS chemicals such as perflurooctanoic acid ("PFOA") and PFOS will be added to any PFOA and PFOS already present.  In humans, PFOA and PFOS remain in the body for years.

191. PFAS' persistence in the environment and its characteristics pose potential adverse effects to human health and the environment.

192. PFAS chemicals such as PFOS, PFOA, perfluorohexane sulfonic acid ("PFHxS"), and perfluorohexanoic acid ("PFHxA") are among the 29 contaminants now being monitored under the EPA's Fifth Unregulated Contaminant Monitoring Rule ("UCMR 5"), a rule EPA promulgated under the Safe Drinking Water Act.[6]  This rule is part of a federal initiative to collect data on unregulated contaminants in public water systems. The goal is to determine the

---

[5] *See, e.g.,* EPA, *Interim Guidance on the Destruction and Disposal of Perfluoroalkyl and Polyfluoroalkyl Substances and Materials Containing Perfluoroalkyl and Polyfluoroalkyl Substances – Version 2 (2024)*, April 8, 2024, available at https://www.epa.gov/system/files/documents/2024-04/2024-interim-guidance-on-pfas-destruction-and-disposal.pdf

[6] *See* Final Rule, Revisions to the Unregulated Contaminated Monitoring Rule (UCMR 5) for Public Water Systems and Announcement of Public Meetings, 86 Fed. Reg. 73131 (Dec. 27, 2021).

prevalence and concentration of these contaminants to assess whether future regulation is necessary to protect public health.

193.    EPA has concluded that PFOS and PFOA are likely to cause adverse effects to humans.

194.    PFHxS is commonly associated with industrial processes and consumer products. PFHxS is known for its persistence in the environment and the human body, where it bioaccumulates and resists degradation.  Research has linked PFHxS to several potential health risks.

195.    Chronic exposure to PFHxA, such as consuming drinking water containing PFHxA over an extended period could pose health risks.  EPA has concluded that PFAS chemical perfluorobutanoic acid ("PFBA") can also cause adverse health effects in humans.

196.    On April 10, 2024, EPA announced enforceable levels for PFOA, PFOS, and PFHxS in drinking water.  EPA set maximum containment levels ("MCLs") for PFOA and PFOS at 4.0 ppt and PFHxS at 10.0 ppt (also expressed as ng/L) under the Safe Drinking Water Act.[7]  On May 14, 2025, the Trump Administration announced that EPA would retain drinking water standards for PFOA and PFOS, and reevaluate standards EPA had set for others.[8]

197.    These levels are below the current levels in Plaintiffs' Water Sources, but EPA allows drinking water providers five years to come into compliance; these levels are therefore not enforceable until at least April 2029.[9]

---

[7] *See* Final Rule, PFAS National Primary Drinking Water Standards, *See* 89 Fed. Reg. 32532 (April 26, 2024).

[8] *See* EPA Press Release, *EPA Announces it Will Keep Maximum Containment Levels for PFOA, PFOS* (May 14, 2025), available at https://www.epa.gov/newsreleases/epa-announces-it-will-keep-maximum-contaminant-levels-pfoa-pfos.

[9] EPA also recently announced it intends to allow certain drinking water providers up to two additional years to address the MCL levels, but EPA has yet to finalize this amendment.  *See id*.

198.    Effective July 9, 2024, the EPA designated both PFOS and PFOA as a "hazardous substance" under CERCLA, 42 U.S.C. §§ 9601 *et seq.,* because EPA determined that PFOS "may present a substantial danger to the public health or welfare or the environment when released."[10]   Under CERCLA, the quantity or concentration of a hazardous substance is not a factor.

## DEFENDANTS' TORTIOUS CONDUCT CAUSES PFAS TO MIGRATE TO AND EXIST IN PLAINTIFFS' WATER SOURCES

199.    As a result of Defendants' tortious actions, omissions, and conduct in the use, release, storage, handling, and/or disposal of PFAS and PFAS containing materials at, near, or within the vicinity of the groundwater protection area for Plaintiffs' Water Sources, PFAS has been caused to migrate into and exist in Plaintiffs' Water Sources and property, thereby damaging and injuring Plaintiffs.

200.    Between 2019 and 2022, the United States Geological Survey (USGS) and the West Virginia Division of Health and Human Resources conducted a series of tests of source and finished water quality in various public water systems across West Virginia, including Weirton. These tests focused on the presence of various PFAS in Plaintiffs' Water Sources.

201.    Samples taken from the Water Sources confirmed the presence of multiple PFAS compounds in the Weirton Water Sources, including both the groundwater well and the Ohio River, including but not limited to PFOA, PFOS, PFHxS, and PFHxA.

202.    To comply with EPA's new standards, Plaintiffs will be obligated to construct significant additional treatment infrastructure for PFAS removal.

---

[10] Final Rule, Designation of Perfluorooctanic Acid (PFOA) and Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous Substances, 89 Fed Reg. 39124 (May 8, 2024).

203.    PFAS were and are released from Defendants' facilities via several pathways. These pathways include wastewater discharge, with PFAS contaminated wastewater discharged directly into waterways; solid waste, and PFAS contaminated solid waste and/or sludge leaching into groundwater and surface water; air emissions, with PFAS released during the manufacturing processes and depositing on soils and water via atmospheric deposition; surface runoff, where PFAS contaminants on the ground get picked up via rainfall or snowmelt and flow to surface waters or migrate to groundwater.

## FIRST CAUSE OF ACTION

### *Cost Recovery Liability Pursuant to 42 U.S.C. § 9607 (CERCLA)*

204.    Plaintiffs repeat, re-allege, and incorporate each and every allegation set forth in all other paragraphs of this Complaint, as if fully set forth herein, and further allege as follows:

205.    Under CERCLA, 42 U.S.C. §§ 9601, *et seq*., owners and operators of facilities are liable for "costs of response incurred by any…person" occasioned by a "release, or a threatened release which causes the incurrence of response costs, of a hazardous substance," and other forms of compensation.  42 U.S.C. § 9607(a).

206.    Plaintiffs are  "persons" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

207.    Each Defendant is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

208.    CERCLA defines the term "release" broadly and it means, among other things, "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment…."  42 U.S.C. § 9601(22).

209.    Each Defendant is, or was, an "owner" and/or "operator" within the meaning of Section 101(20) of CERCLA, 42 U.S.C. § 9601(20).

210.    Each of Defendants' locations identified above is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

211.    PFOA and PFOS are each a "hazardous substance" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), by designation pursuant to Section 102 of CERCLA, 42 U.S.C. § 9602.

212.    There has been a release, and/or continue to be releases, and/or disposal of hazardous substances from each Defendants' facility within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

213.    The hazardous substances released from Defendants' facilities were, and are being, released within the source water protection area for Weirton, or have flowed via the Ohio River to the source water protection area for Weirton, and have and are migrating into Plaintiffs' Water Sources and/or public drinking water supply.

214.    Plaintiffs have incurred and will continue to incur necessary response costs, all of which are, and will be, consistent with the national contingency plan, to address the release or threatened release of hazardous substances from Defendants' facilities.

215.    Each Defendant is therefore a responsible party pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and liable for necessary response costs as the owner or operator of a facility from which there was a release of hazardous substances into Plaintiffs' Water Sources and/or public drinking water supply.

216.    In addition, the HTS defendants are also responsible parties pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and liable for necessary response costs as arrangers and transporters of hazardous substances to disposal and/or incineration facilities from which

there was a release of hazardous substances that are within Plaintiffs' Water Sources and/or public drinking water supply.

217.    By reason of the foregoing, Defendants are liable, jointly and severally, for Plaintiffs' necessary response costs, and damages regarding hazardous substances in Plaintiffs' Water Sources and/or public water supply.

## SECOND CAUSE OF ACTION

### *Declaratory Judgment Pursuant to 42 U.S.C. §§ 9607(a) and 9613(g)(2) (CERCLA)*

218.    Plaintiffs repeat, re-allege, and incorporate each and every allegation set forth in all other paragraphs of this Complaint, as if fully set forth herein, and further allege as follows:

219.    CERCLA § 113(g)(2) provides in pertinent part: "In any action described in this subsection [which includes 42 U.S.C. §§ 9607(a),] the court shall enter a declaratory judgment of liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 113 (g)(2).

220.    By reason of the foregoing and pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), Plaintiffs are entitled to a declaratory judgment on liability and damages under 42 U.S.C. § 9607(a) for costs to remove and/or remediate the hazardous substances and PFAS in Plaintiffs' Water Sources and/or public drinking water supply as referenced herein.

221.    A declaratory judgment will prevent the need for multiple lawsuits as Plaintiffs continue to incur costs for which Defendants are liable and will provide a resolution of the issue between the parties regarding further liability for future costs.

222.     A declaratory judgment will establish Defendants' allocation of costs associated with addressing the presence of PFAS in Plaintiffs' Water Sources and/or public water supply, insuring an equitable and efficient response to the problem.

223.    Public interest will be served in that a declaratory judgment will ensure a prompt and environmentally proper response to the presence of PFAS in Plaintiffs' Water Sources and/or public drinking water supply.

224.    Plaintiffs will continue to incur additional remedial and response costs, including, but not limited to, costs to investigate, test, monitor, design, install, operate and maintain treatment systems, and take other measures to address the presence of PFAS in its property and Water Sources.

225.    Plaintiffs' costs are and will be consistent with the National Contingency Plan, 40 C.F.R. Part 300.

226.    Plaintiffs are thus entitled to a declaratory judgment regarding Defendants' liability for response costs and damages that will be binding on subsequent actions to recover further response costs or damages.

## THIRD CAUSE OF ACTION
### *Public and Private Nuisance*

227.    Plaintiffs repeat, re-allege, and incorporate each and every allegation set forth in all other paragraphs of this Complaint, as if fully set forth herein, and further allege as follows:

228.    Plaintiffs are the owners of land, easements, and/or water rights which permit them to extract, use and sell water for their Water System.

229.    Plaintiffs have the right to draw and use water from the Water Sources.

230.    The actions of Defendants as alleged herein, have caused PFAS to exist in Plaintiffs' Water Sources and Water System, together with the waters that supply them.

231.    The presence of PFAS in Plaintiffs' Water Sources and Water System substantially and unreasonably interferes with Plaintiffs use of its Water Sources and Water System and constitute a private nuisance under West Virginia law.

38

232. The presence of PFAS in Plaintiffs' Water Sources and Water System operates to hurt and/or adversely affects the public and constitutes an unreasonable interference with the public and Plaintiffs use of the Water Sources.

233. Each Defendant has caused and/or contributed to the existence of such nuisance.

234. By their actions, Defendants have unreasonably interfered with and/or hurt and/or inconvenienced the public right to the Water Sources and drinking water.

235. The nuisance caused by the presence of PFAS in Plaintiffs' Water Sources, both existing concentrations and those still migrating to it, has hurt and/or inconvenienced the property, health, safety and/or comfort of a considerable number of persons and affected the public at large.

236. Plaintiffs have suffered injury and damages from the nuisance that are different in kind from the injuries and/or damages suffered by the public from the nuisance because Plaintiffs have unique obligations to use water from the Water Sources, treat the water, and provide it for consumption. Plaintiffs also have unique obligations that do not apply to public at large, *inter alia*, the obligation to incur the substantial costs to remove PFAS from the water it draws from the Water Sources and the obligation to comply with all state and federal laws regarding the treatment and supply of drinking water.

237. Defendants caused or contributed to the creation of the nuisance at issue by tortiously using, handling, disposing, and/or discharging, materials containing PFAS in a manner that the Defendants knew or should have known would result in the presence of PFAS in soil and groundwater and ultimately impacting the Plaintiffs' Water Sources and property and rights.

238.    Defendants knew or, in the exercise of reasonable care should have known, that the release of PFAS would and has unreasonably and seriously interfered with and hurt the ordinary comfort, use, and enjoyment of the Water Sources relied upon by Plaintiffs.

239.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, PFAS is and will continue to be present in Plaintiffs' Water Sources and Water System, thereby causing Plaintiffs significant injury and damage.

240.    As a direct and proximate result of the Defendants' acts and omissions as alleged herein, the presence of PFAS in Plaintiffs' Water Sources and Water System constitutes an ongoing public and/or private nuisance.

241.    Defendants are jointly and severally responsible to take such action as is necessary to abate the public and/or private nuisance and to take such action as is necessary to ensure that the PFAS in Plaintiffs' Water Sources and systems, as well as the water that supplies them, do not hurt or inconvenience the public.

242.    Plaintiffs have been damaged because Defendants' acts and omissions, have unreasonably interfered with, and continue to interfere with, Plaintiffs' use and enjoyment of its Water Sources and Plaintiffs have suffered and continue to suffer significant damages and injuries including, but not limited to, incurring costs related to the investigation, sampling, treatment system design, acquisition, installation, operations and maintenance, and other costs and damages related to the detection and removal of the PFAS in its Water Sources and Water System.

243.    Defendants knew and/or should have known that it was substantially certain that their alleged acts and omissions described in this Complaint would cause injury and damage, including the presence of PFAS in Plaintiffs' Water Sources.

40

244. Defendants' acts and omissions were substantially certain to and did result in an unreasonable interference with Plaintiffs' Water Sources, systems, and rights.

245. As a direct and proximate result of the Defendants' acts and omissions, the Defendants caused Plaintiffs to suffer actual losses.

246. Defendants' conduct as alleged herein was intentional, willful, wanton, unlawful and/or reckless. Defendants acted with actual malice and a conscious, reckless and outrageous indifference and, accordingly, punitive damages are warranted and justified in this case.

### FOURTH CAUSE OF ACTION
#### *Negligence*

247. Plaintiffs repeat, re-allege, and incorporate each and every allegation set forth in all other paragraphs of this Complaint, as if fully set forth herein, and further allege as follows:

248. Defendants knew or should have known that PFAS and PFAS containing products, and other toxic chemicals, create a substantial risk of harm to groundwater and Plaintiffs' Water Sources.

249. Defendants knew or should have known that the materials containing PFAS and other toxic substances which they were distributing, purchasing, transporting, using, processing, mixing, storing, handling and/or disposing created a substantial risk of harm to Plaintiffs' Water Sources and Water System.

250. At all times material herein, Defendants owed Plaintiffs a duty to act as reasonable operators and/or owners of property and to take all necessary precautions to prevent the release of PFAS and other chemicals into the soil and groundwater at their properties.

251. At all times material herein, Defendants owed Plaintiffs a cognizable duty to exercise reasonable care in the purchasing, transporting, using, processing, mixing, storing, handling and/or disposing of PFAS and/or in owning property upon which such actions and/or

41

results occurred to take reasonable measures to prevent the release and spread of PFAS and other toxic chemicals into the hydrological features and into Plaintiffs' Water Sources.

252. At all times material herein, Defendants owed Plaintiffs a duty to act as reasonable operators and/or owners of property and to take all necessary steps to prevent the continuing and future release of PFAS from their facilities and/or properties.

253. Defendants breached this duty by *inter alia*, negligently distributing, storing, transporting, handling, and/or disposing of, or willfully, wantonly, and intentionally spilling, disposing of, or otherwise permitting the release of PFAS at and from their facilities and/or properties.

254. At all relevant times herein, it was foreseeable to the Defendants that PFAS released from their facilities and/or operations and/or activities, as aforesaid, would migrate into Plaintiffs' Water System and/or cause PFAS to exists in Plaintiffs' Water Sources.

255. Upon learning of a release of solvents and compounds including, but not limited to PFAS containing products and PFAS and other toxic chemicals, at their facilities and/or properties, Defendants owed Plaintiffs a duty to act reasonably to warn, remediate, contain, and eliminate the release before PFAS reached Plaintiffs' Water Sources and Water System.

256. At all times material herein, Defendants breached the above duties and failed to prevent the releases of PFAS containing products at their properties.

257. Defendants also failed to take reasonable, adequate and sufficient actions to eliminate, correct, or remedy the releases of PFAS and other toxic chemicals after they occurred.

258. Defendants continue to breach their duties to remediate and prevent ongoing and future releases of PFAS and other toxic chemicals from their properties into the groundwater that flows towards and is continuing to impact Plaintiffs' Water Sources.

42

259. As a result of Defendants' breaches of their duties, Plaintiffs have been injured and damaged and Defendants have caused Plaintiffs to suffer actual losses. Specifically, Plaintiffs suffered damage requiring investigation, clean-up, abatement, remediation, and monitoring costs and suffered other damages in an amount to be determined at trial.

260. Defendants' breach of their duties was the direct and proximate cause of Plaintiffs' damages.

261. Defendants' conduct as alleged herein was intentional, willful, wanton, unlawful and/or reckless and was directed at the public generally, constituted a gross and wanton fraud upon the public, and/or constituted gross negligence. Defendants acted with actual malice and a conscious, reckless and outrageous indifference to the health, safety and welfare of Plaintiffs and, accordingly, punitive damages are warranted and justified in this case.

## FIFTH CAUSE OF ACTION
### Continuing Trespass

262. Plaintiffs repeat, re-allege, and incorporate each and every allegation set forth in all other paragraphs of this Complaint, as if fully set forth herein, and further allege as follows:

263. Plaintiffs own, possess, and exercise rights to withdraw and use water from Plaintiffs' Water Sources.

264. Upon information and belief, Defendants knew, or should have known, that PFAS would migrate through groundwater and exists in Plaintiffs' Water Sources and impair Plaintiffs' rights.

265. The acts and omissions of Defendants caused the PFAS to migrate, via surface soils and sediments, stormwater runoff, the ground, the Ohio river and its tributaries, and groundwater, and enter Plaintiffs' Water Sources that Plaintiffs use for their drinking water

43

supply, interfering with Plaintiffs' property rights, including Plaintiffs' right to the full use and enjoyment of the Water Sources and Water System.

266.   Defendants acts and omissions created a trespass on Plaintiffs' property and unlawful interference with Plaintiffs' property rights.

267.   The presence of PFAS in Plaintiffs' Water Sources and Water System has not ceased.  PFAS continues to migrate into and enter Plaintiffs' Water Sources and Water System.

268.   As a direct and proximate result of Defendants' conduct in creating an ongoing trespass against Plaintiffs' property, in the form of the ongoing presence of PFAS in Plaintiffs' Water Sources and Water System, Plaintiffs have incurred substantial damages and will incur additional damages to remove PFAS from its water supply.

269.   As a direct result of the foregoing, Plaintiffs seeks compensatory damages in a sum to be determined at the time of trial.

270.   Defendants' conduct as alleged herein was intentional, willful, wanton, unlawful and/or reckless.  Defendants acted with actual malice and a conscious, reckless indifference, and accordingly, punitive damages are warranted and justified in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court to enter judgment in their favor against Defendants, jointly and severally, awarding all such relief the Court deems appropriate and just, including[11]:

1.   An Order that Defendants abate the nuisance.

---

[11] Plaintiffs expressly disclaim recovery for PFAS contamination from aqueous film-forming foam (AFFF).

2.  An award of compensatory damages in an amount to be decided by a judge and/or jury, including damages for, but not limited to, investigation, clean-up, remediation, and monitoring costs incurred by Plaintiffs.

3.  An award of punitive damages in an amount decided by a judge and/or jury.

4.  An order declaring judgment, liability and damages under 42 U.S.C. § 9607(a) for costs to remove and/or remediate the presence of PFAS in water drawn by Plaintiffs from Plaintiffs' Water Sources and/or Water System.

5.  An award to Plaintiffs for the costs of this suit and attorney fees. and

6.  Award Plaintiffs such other relief as the Court deems just, equitable, and proper.

**DATED**:     June 11, 2025

Respectfully submitted,

**WEIRTON AREA WATER BOARD AND THE CITY OF WEIRTON, WEST VIRGINIA,** *Plaintiffs*

*/s/ Clayton J. Fitzsimmons*

Clayton J. Fitzsimmons, Esq. (WV Bar #10823)
Mark A. Colantonio, Esq. (WV Bar #4238)
Robert P. Fitzsimmons, Esq. (WV Bar #1212)
**FITZSIMMONS LAW FIRM PLLC**
1609 Warwood Avenue
Wheeling, WV 26003
Telephone: (304) 277-1700
Email: clayton@fitzsimmonsfirm.com
Email: mark@fitzsimmonsfirm.com
Email:bob@fitzsimmonsfirm.com

**NAPOLI SHKOLNIK PLLC**
Paul J. Napoli, Esq.
*(Pro Hac Vice Forthcoming)*
1302 Avenida Ponce de Leon
Santurce, Puerto Rico 00907
(833) 271-4502
pnapoli@nsprlaw.com

45

**NAPOLI SHKOLNIK PLLC**
James L. Simpson, Esq.
*(Pro Hac Vice Forthcoming)*
360 Lexington Avenue, 11th Fl.
New York, New York 10017
(212) 397-1000
JSimpson@napolilaw.com

**GUIDA LAW OFFICES, PLLC**
Daniel J. Guida, Esq. (WV Bar #4604)
3374  Main Street
Weirton, WV 26062
(304) 748-1213
Guidalaw@comcast.net

***Counsel for Plaintiffs***

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET
RECEIVED 6/11/2025 5:25-cv-126

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
WEIRTON AREA WATER BOARD and CITY OF WEIRTON, WEST VIRGINIA

## DEFENDANTS
HERITAGE THERMAL SERVICES, INC., et al.

**(b)** County of Residence of First Listed Plaintiff   Brooke County, WV
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Marion County, IN
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Fitzsimmons Law Firm PLLC
1609 Warwood Avenue, Wheeling, WV 26003
304-277-1700

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**     **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product    Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability    ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel &    Pharmaceutical   Slander      Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'    Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability    ☐ 368 Asbestos Personal   ☐ 340 Marine      Injury Product   ☐ 345 Marine Product      Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation    ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | Liability    **PERSONAL PROPERTY**   ☐ 350 Motor Vehicle    ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark    ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | Product Liability    ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal    Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury    ☐ 385 Property Damage   ☐ 362 Personal Injury -    Product Liability      Medical Malpractice | ☐ 740 Railway Labor Act    ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923)    ☐ 863 DIWC/DIWW (405(g))    ☐ 864 SSID Title XVI | Exchange    ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**     **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights     **Habeas Corpus** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters    ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment    ☐ 510 Motions to Vacate | | or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/    Sentence | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations    ☐ 530 General | | 26 USC 7609 | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -    ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment    **Other**   ☐ 446 Amer. w/Disabilities -    ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application    ☐ 465 Other Immigration | | ☐ 950 Constitutionality of State Statutes |
| | Other    ☐ 550 Civil Rights   ☐ 448 Education    ☐ 555 Prison Condition      ☐ 560 Civil Detainee -        Conditions of        Confinement | Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §§ 9607(a) and 9613(f)(1)

Brief description of cause:
Contamination of Plaintiffs' Water Sources

## VII. REQUESTED IN COMPLAINT
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND

CHECK YES only if demanded in complaint:
**JURY DEMAND**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*

JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| Jun 11, 2025 | /s/ Clayton J. Fitzsimmons |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **( )**    **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**    **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below  **NOTE  federal  uestion actions take precedence over diversity cases.**)

**III.**    **Residence (citi enship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**    **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation    Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation    Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**    **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite  urisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**    **Re uested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.**  This section of the JS 44 is used to reference related cases, if any.  If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

Dated: October 6, 2025

Respectfully Submitted,

*/s/ Travis L. Brannon*
Travis L. Brannon (WVSB # 12504)
K&L Gates LLP
K&L Gates Center 210 Sixth Avenue
Pittsburgh, PA 15222
Tel: (412) 355-7443
travis.brannon@klgates.com

Cy A. Hill, Jr. (WVSB #8816)
Jennifer A. Lynch  (WVSB #12140)
Eric T. Frye (WVSB #10770)
Cipriani & Werner PC
Laidley Tower
500 Lee Street East Suite 900
Charleston, WV 25301
Tel: (304) 341-0500
Fax: (304) 341-0507
Chill@c-Wlaw.Com
Jlynch@c-Wlaw.Com
Efrye@c-Wlaw.Com

*Counsel for Heritage Thermal Services, Inc.
n/k/a Arcwood Environmental – East
Liverpool, Inc. and Heritage Transport LLC,
n/k/a Arcwood Transport, LLC*